UNITED STATES of America

v.

**Jefferson P. LEATHERMAN.**

**Crim. No. 82–0091.**

United States District Court,
District of Columbia.

Oct. 5, 1983.

John C. Martin, Asst. U.S. Atty., Washington, D.C., for the U.S.

John D. Aldock, Washington, D.C., for Leatherman.

## MEMORANDUM AND ORDER DENYING INTERIM RELIEF

GESELL, District Judge.

Mr. Leatherman was found not guilty by reason of insanity and committed by this Court to St. Elizabeth's Hospital for treatment on July 30, 1982. The present proceeding, brought pursuant to D.C.Code Ann. § 24–301(k) (1981), represents his first attempt to obtain release. Subsequent to the filing of this proceeding, the staff of St. Elizabeth's, after lengthy deliberation and extensive administrative review, determined that Mr. Leatherman requires the administration of Haldol, a psychotropic drug, to stabilize and hopefully improve what the staff considers a deteriorating mental condition detrimental to his health.

Mr. Leatherman has refused to have the drug administered to him, on the basis of nonreligious objections. As part of the § 301(k) proceeding Mr. Leatherman petitions the Court for an order enjoining administration of psychotropic drugs, asserting common law and due process constitutional rights. The matter was fully briefed and argued and limited factual material has been submitted. Both parties have asked that the issues be resolved on purely legal grounds. No evidentiary hearing has been held. The case is now before the Court on petitioner's motion for interim and final relief.

These facts are undisputed:

(1) Mr. Leatherman is competent to participate in the § 301(k) proceedings. He is oriented as to time and place, conscious of the issues, and able to converse with his counsel and assist in the preparation of his case.

(2) No emergency situation exists and the Hospital does not suggest that administration of Haldol is necessary to prevent physical harm to Mr. Leatherman or others.

(3) After complying with its own internal administrative review procedures, the Hospital has determined that (a) Mr. Leatherman would be a danger to himself and others if released into the community at this time; (b) the use of psychotropic medication is necessary to treat Mr. Leatherman properly; and (c) Mr. Leatherman is currently incompetent to make a reasoned, rational decision concerning the use of this medication therapy. (Ex. 1 to Gov. Opp. brief).

Commitment following a determination of not guilty by reason of insanity is designed to remove from society one who is dangerous to himself or others until, as a result of treatment and hospital care, the individual is no longer mentally ill or dangerous. The commitment carries with it an affirmative duty on the part of the mental institution to provide such an individual with treatment which is "adequate in light of present knowledge." *Rouse v. Camer-*

*on,* 373 F.2d 451, 456 (D.C.Cir.1967). The Court must therefore consider whether this duty to treat allows the Hospital to administer intrusive drug therapy despite Mr. Leatherman's objections.

Mr. Leatherman asserts both a common law and constitutional due process right to refuse administration of psychotropic drugs, relying principally upon *In re Boyd,* 403 A.2d 744 (D.C.1979); *Rogers v. Okin,* 634 F.2d 650 (1st Cir.1980), *vacated and remanded on other grounds sub. nom., Mills v. Rogers,* 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982); and *Rennie v. Klein,* 653 F.2d 836 (3d Cir.1981) (*en banc* ), *vacated,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982). While the Court need not make a final determination of the issue, these cases do suggest that an individual involuntarily committed for psychiatric treatment in a civil or criminal proceeding may still retain a liberty interest in determining whether to undergo or refuse intrusive therapy utilizing psychotropic drugs, so long as that individual is competent to make such a decision. *Boyd,* 463 A.2d at 747 n. 5, 748 n. 8; *Rogers,* 634 F.2d at 653; *Rennie,* 653 F.2d at 844.*

The case law which the Hospital cites to negate this proposition is of questionable relevance. *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), concerned a patient who was "profoundly retarded" and thus clearly not competent to participate in treatment decisions. In *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), the Court, while noting that transfer from a prison to a mental institution would subject the petitioner "involuntarily to institutional care" and "subject him to involuntary psychiatric treatment," 445 U.S. at 493, 494, 100 S.Ct. at 1264, did not consider particularly intrusive treatment such as is at issue here. Finally, *Jones v. United States,* ── U.S. ──, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), likewise is not applicable. The dissent in *Jones* did express concern that "a person

who has been hospitalized involuntarily may to a significant extent lose the right enjoyed by others to withhold consent to medical treatment. *See Youngberg v. Romeo.*" ── U.S. at ──, 103 S.Ct. at 3060. The citation to *Youngberg,* however, indicates that the dissenting Justices were not purporting to determine the rights of a competent patient.

■ Were it clear that Mr. Leatherman was competent to refuse the proposed treatment, the Court would be prepared to make a final determination of his right to do so. The Hospital has concluded, however, that Mr. Leatherman is not competent to make such a decision. Mr. Leatherman contends that due process requires that this determination of lack of competency be made only by a Court, and until a Court has found Mr. Leatherman incompetent to refuse treatment with Haldol the Hospital cannot administer the drug over his objections. For reasons set forth below, however, the Court must reject this argument.

In determining whether a court hearing is required to satisfy due process, the Court must consider the interests of the government and the risks of an erroneous decision in addition to any liberty interest Mr. Leatherman may have. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Rennie,* 653 F.2d at 848. It is clear that the interests of the government strongly militate in favor of leaving the determination of Mr. Leatherman's competence to refuse treatment to the Hospital rather than the courts. To require the courts to pass on such issues would embroil them in a never-ending controversy concerning medical judgments for which courts have neither the institutional resources nor the necessary expertise. Unlike the determination of competency to stand trial, competency to participate in treatment decisions may change over time; indeed, it might vary from day to day for many patients. For the Hospital the inevi-

---

* The applicability of *Boyd* to the present case, however, is somewhat unclear. Petitioner was committed to a federal institution by a federal court for a federal offense. The Court raises the issue, without deciding it, whether under these circumstances federal law preempts any common law right recognized in the District of Columbia.

table continuous shuttle of doctors and patients back and forth from treatment rooms to courtrooms would hamper the Hospital's ability to perform its mandated duty to provide adequate treatment to those committed to its charge. Finally, the delay which would inevitably accompany a requirement of judicial determination of competency to refuse treatment could have grave consequences to the patient. Where a nonconsenting patient is in fact incompetent, unnecessary deterioration in the patient's condition could occur while the Hospital awaited judicial approval before proceeding with treatment. Thus the government's interest in both efficiency and effective treatment of its patients augur against requiring a Court determination of a patient's competency to refuse treatment.

Although the record before the Court is scant, there is little to suggest that administrative review within the Hospital would necessarily involve a significantly greater risk of an erroneous decision than would a court hearing. "[T]here certainly is no reason to think judges or juries are better qualified than appropriate professionals in making such decisions." *Youngberg*, 457 U.S. at 322–23, 102 S.Ct. at 2462. Furthermore, in *Vitek* the Supreme Court held that in determining whether an inmate should be transferred to a mental institution—a decision directly concerned with the inmate's mental condition—"the independent decisionmaker conducting the transfer hearing need not come from outside the prison or hospital administration." 445 U.S. at 496, 100 S.Ct. at 1265. It would appear, therefore, that due process does not require a court hearing to determine the issue of competency to refuse treatment with psychotropic drugs if hospital procedures employ sufficient safeguards and if, as here, there is no suggestion that the Hospital treatment decision offends accepted medical practice.

Procedures employed at St. Elizabeth's provide that medication may be administered over a patient's objections only after consultation with the Patient Advocate and with the patient's family, and after completion of an independent administrative review resulting in findings concerning the patient's degree of capacity to make treatment decisions, the likely usefulness of the medication, the availability of alternative means of treatment, the likelihood of physical harm to the patient or others if medication is not administered, the patient's prognosis without medication, and the risk of permanent side effects. St. Elizabeth's Hospital, *Policy and Procedure Manual— Involuntary Administration of Medication* § 5(c) (Ex. 2 to Gov.Opp. brief). Because the parties have not addressed the particulars of the Hospital's procedures, the Court is not in a position at this time to make a definitive determination as to whether the procedures currently employed are sufficient in all cases to provide due process protection. On the evidence now before the Court, however, there is no indication that these procedures do not provide sufficient safeguards in this particular case. *See Rennie*, 653 F.2d at 848–851.

■ A further contention is advanced. Mr. Leatherman argues that due process compels a delay in treatment pending completion of the § 301(k) hearing. Under § 301(k) an involuntarily committed mental patient has the right to a prompt determination of his suitability for release every six months. To require that psychotropic drug therapy be suspended upon request during the pendency of a § 301(k) petition could thus seriously undermine the Hospital's ability to carry out its treatment of its patients. Petitioner's counsel indicates that the independent psychiatrist retained by petitioner will not be prepared to testify for at least three weeks and that there may be additional delays or even a later decision to forego the petition, and submits therefore that a hearing date should not be set at this time. Although the Court acknowledges counsel's able and diligent attempts to proceed with the petition, four months have elapsed since the petition was filed and the Hospital's proposed treatment is now almost a month delayed. Petitioner's psychiatrist has twice interviewed petitioner as of this date, significantly lessening the possibility that his analysis will be un-

duly affected by any drug administered to Mr. Leatherman. Under the circumstances of the present case at least, it does not appear appropriate for the Court to intervene.

For the foregoing reasons the Court is of the view that petitioner has not shown a substantial likelihood of success on the ultimate issues presented. Nor has petitioner demonstrated irreparable injury either to his health or to his opportunity for a meaningful § 301(k) hearing if the Hospital is allowed to proceed with the proposed treatment. Petitioner's request for interim relief preventing administration of Haldol is therefore denied.

SO ORDERED.