**UNITED STATES of America,
Petitioner,**

v.

**George J. BRYANT, Respondent.**

**Civ. No. 3–86–484.**

United States District Court,
D. Minnesota,
Third Division.

March 20, 1987.

James E. Lackner, Asst. U.S. Atty., Minneapolis, Minn., for U.S.

Kevin A. Lund, Patterson-Restovich Law Offices, Ltd., Rochester, Minn., for George Bryant.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter comes before the court on the Objections filed by the United States to the Report and Recommendation of United States Magistrate Bernard P. Becker dated October 16, 1986. Specifically, the United States objects to that portion of the Magistrate's Report and Recommendation which recommended that the United States' request for an order authorizing the forcible administration of medication to respondent George Bryant (Bryant) be denied. The parties, through their respective counsel, have submitted memoranda supporting their positions and the court considers the United States' objections on the materials submitted, including the transcript of the hearing before Magistrate Becker on August 1, 1986, and without oral argument.

The United States petitioned the court, pursuant to 18 U.S.C. § 4245, to determine the mental condition of Bryant following Bryant's refusal to consent to psychiatric treatment. In conjunction with its petition under § 4245, the United States requested that the court commit Bryant to the custody of the Attorney General for treatment, including medication. In his Report and Recommendation of October 16, 1986, Magistrate Becker found that Bryant suffered from a mental disease or defect and required care and treatment in a suitable medical facility, such as Federal Medical Center—Rochester (FMC). Neither party objects to this finding and transfer of Bryant to FMC for care and treatment was thus appropriate pursuant to 18 U.S.C. § 4245. In addition to this finding, however, the magistrate concluded that the United States could not forcibly administer antipsychotic medication to Bryant without his consent, absent an emergency or an adjudication of incompetency. It is this latter conclusion to which the United States objects.

When a party files objections to the magistrate's Report and Recommendation, the court must conduct a de novo review of those portions of the Report and Recommendation to which the party objects. 28 U.S.C. § 636(b)(1)(B) and (C). Based upon an independent review of the files, records, and proceedings in this case, including the transcript of the hearing before Magistrate Becker on August 1, 1986, and after con-

ducting a de novo review of that portion of the Report and Recommendation to which the United States objects, the court rejects, in part, the Report and Recommendation of Magistrate Becker dated October 16, 1986.

Magistrate Becker set forth detailed findings of fact and neither party challenges those findings. As such, the court need not recite the magistrate's findings in detail, but merely highlights those facts essential to a basic understanding of the present controversy. George Bryant is an inmate within the federal prison system. While incarcerated at FCI–Talledega, Alabama, Bryant refused to enter the open population on the basis that he had allegedly been threatened by other inmates and an outside drug dealer. Because of his fear, Bryant remained in seclusion. Mental health care workers, including psychiatrist Dr. John Davis, periodically visited Bryant. Dr. Davis diagnosed Bryant as a paranoid schizophrenic and prescribed Haldol, an antipsychotic medication. After suffering certain side effects from Haldol, Bryant refused further medication.

On the basis of his abnormal behavior and Dr. Davis' diagnosis, Bryant was transferred to FMC in April 1986 and placed in the diagnostic and observation unit. Bryant again went into seclusion and also rejected food and medicine, fearing poisoning. His refusal to eat resulted in a significant weight loss. Bryant threatened a staff member with bodily harm, assaulted an unidentified person, and set fire to his cell. He has further indicated that his placement in the open population would cause violence.

Dr. H.R. Martin, staff psychiatrist, and Dr. Christina Echols, staff psychologist, interviewed and evaluated Bryant during his stay at FMC. Both concluded that Bryant suffers from paranoid schizophrenia. Moreover, both Dr. Martin and Dr. Echols believe that antipsychotic medication is essential to an effective treatment of Bryant. In their opinion, continued seclusion, without the benefit of treatment by medication, will not improve Bryant's condition but rather cause it to deteriorate or remain unchanged. Continued seclusion is effectively no treatment at all. Dr. Martin also testified that other forms of treatment, such as individual or group therapy, would be of no benefit to Bryant without the aid of antipsychotic medication. Since Bryant has not used antipsychotic medication for a period long enough to indicate how it would affect him, Dr. Martin proposes a limited use of the medication for evaluation.

Following Bryant's refusal to consent to treatment by antipsychotic medication, the United States brought the present petition pursuant to 18 U.S.C. § 4245. Section 4245 affords federal inmates certain procedural protections, including a court hearing, before they may be transferred to a mental hospital and subjected to psychiatric treatment. Essentially, § 4245 incorporates those procedural due process protections recognized by the Supreme Court in *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). (Fourteenth Amendment entitles state prison inmate certain procedural protections before he is transferred to a mental hospital for treatment). Section 4245 provides, in pertinent part:

(a) Motion to determine present mental condition of imprisoned person.—If a person serving a sentence of imprisonment objects either in writing or through his attorney to being transferred to a suitable facility for care or treatment, an attorney for the government ... may file a motion ... for a hearing on the present mental condition of the person....

\* \* \* \* \* \*

(d) Determination and disposition.—If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General. The Attorney General shall hospitalize the person for treatment in a suitable facility until he is no longer in need of such custody for care or treatment....

18 U.S.C. § 4245(a) and (d).

After conducting an evidentiary hearing under 18 U.S.C. § 4245, Magistrate Becker

determined that Bryant suffered from a mental disease or defect for which a transfer to FMC for care and treatment was appropriate. Magistrate Becker further concluded, however, that under the circumstances presented FMC may not forcibly medicate Bryant. Under the magistrate's analysis, absent an emergency or consent, the United States may not forcibly administer antipsychotic medication to an inmate, unless the inmate is determined to be incompetent.[1] By its present objections, the United States challenges the magistrate's latter conclusion. Specifically, the United States contends that once a judicial determination is made, under 18 U.S.C. § 4245, that an inmate is in need of psychiatric care or treatment in a suitable facility, the court may not interfere with the medical decision as to what treatment is appropriate. In other words, the United States asserts that once the need for psychiatric treatment is established, the Bureau of Prisons may provide whatever form of treatment it feels appropriate, even if the inmate objects. Under this theory, any due process right an inmate has to refuse such treatment is satisfied by the § 4245 hearing and the judicial determination that psychiatric care and treatment is needed.

The court faces a most difficult task in this case of balancing the competing interests of the government against an individual's interest to refuse medical treatment. The precise issue presented is one of first impression and involves consideration of the constitutional right of a federal inmate to refuse antipsychotic medication following the inmate's commitment for psychiatric care and treatment under 18 U.S.C. § 4245. While § 4245(d) requires the United States to hospitalize Bryant "for treatment in a suitable facility," it does not define "treatment" nor does it expressly authorize the United States to provide any form of treatment it believes appropriate. The issue must instead be analyzed in terms of constitutional due process protections. Such an analysis essentially involves two steps:

> This question has both substantive and procedural aspects.... [T]he substantive issue involves a definition of that protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it. The procedural issue concerns the minimum procedures required by the Constitution for determining that an individual's liberty interest actually is outweighed in a particular instance.

*Mills v. Rogers,* 457 U.S. 291, 299, 102 S.Ct. 2442, 2448, 73 L.Ed.2d 16 (1982) (citations omitted). *See also Project Release v. Prevost,* 722 F.2d 960, 977 (2d Cir.1983).

The court first addresses the question of Bryant's constitutional right, if any, to refuse treatment with antipsychotic medication. In considering this question, the court initially notes that, notwithstanding his status as a convicted federal prisoner, Bryant retains his right to due process protection "to prevent additional deprivation of life, liberty, or property without due process of law." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979) (citations omitted).

In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court reaffirmed that freedom from bodily restraint imposed by arbitrary governmental action has long been recognized as the core of the liberty protected by due process. *Id.* at 316, 102 S.Ct. at 2458. This interest survives both civil involuntary commitment and criminal conviction and incarceration. *Id.* Reasoning that the forcible administration of antipsychotic drugs presents an analogous intrusion upon bodily security, lower courts have recognized a protectable liberty interest in the freedom to avoid unwanted medication with such drugs:

> If incarcerated individuals retain a liberty interest in freedom from *bodily* re-

1. Magistrate Becker presumed Bryant to be competent to make decisions about antipsychotic medications, concluding that the United States had not made a showing of incompetency by clear and convincing evidence. Magistrate Becker also concluded that the United States made no showing of a medical emergency. The United States does not specifically challenge such conclusions.

straints of the kind in *Romeo* then a fortiori they have a liberty interest in freedom from physical and mental restraint of the kind potentially imposed by antipsychotic drugs.

*Bee v. Greaves,* 744 F.2d 1387, 1393 (10th Cir.1984) (emphasis original). *See Johnson v. Silvers,* 742 F.2d 823, 825 (4th Cir.1984); *Project Release v. Prevost,* 551 F.Supp. 1298, 1309 (E.D.N.Y.1982), *aff'd* 722 F.2d 960 (2d Cir.1983). *See also Rennie v. Klein,* 653 F.2d 836, 843–45 (3d Cir.1981) (en banc), *vacated and remanded for further consideration,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982), *on remand* 720 F.2d 266 (3d Cir.1983) (en banc). On the basis of this well-reasoned authority, the court concludes that Bryant has a protected liberty interest in avoiding the unwanted administration of antipsychotic medication.

A conclusion that Bryant retains a protected liberty interest in refusing treatment with antipsychotic medication does not end the court's analysis, however, for that interest is not absolute. There in fact may be occasions when the United States, in operating an institution such as FMC, must be allowed to forcibly administer antipsychotic medication. For instance, such action may be necessary for an inmate's treatment or to maintain security and protect inmates and staff from violence. The essential question in this context "is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint ... is such as to violate due process." *Youngberg v. Romeo,* 457 U.S. at 320, 102 S.Ct. at 2460.

■ To determine whether Bryant's constitutional rights will be violated by forced medication, it is necessary to balance Bryant's liberty interest against the competing governmental interests. *Youngberg v. Romeo,* 457 U.S. at 320–21, 102 S.Ct. at 2460–61; *Bee v. Greaves,* 744 F.2d at 1394; *Project Release v. Prevost,* 722 F.2d at 979.

It is not the court's duty, however, to perform the balancing.[2] *Youngberg v. Romeo,* 457 U.S. at 321, 102 S.Ct. at 2461; *Johnson by Johnson v. Brelje,* 701 F.2d 1201, 1209 (7th Cir.1983). *See also Project Release v. Prevost,* 722 F.2d 979–80. The Constitution requires only "that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Youngberg v. Romeo,* 457 U.S. at 321, 102 S.Ct. at 2461; (quoting *Romeo v. Youngberg,* 644 F.2d 147 (3d Cir.1980) (en banc) (Seitz, C.J., concurring)); *Johnson v. Silvers,* 742 F.2d at 825; *Project Release v. Prevost,* 722 F.2d at 980.

■ In applying such due process standards to the specific facts of this case, the court is convinced that the United States and the authorities at FMC may forcibly administer antipsychotic medication to Bryant on a trial basis consistent with due process. Specifically, the court finds that FMC has in fact exercised its professional judgment in determining that such medication is necessary for the effective treatment of Bryant and the security of FMC. Through the testimony presented at the hearing before Magistrate Becker, it is clear that Bryant was interviewed and evaluated by staff professionals who concurred in the decision to administer antipsychotic medication. These professionals considered alternative methods of treatment, weighed the risks involved, and nevertheless concluded that antipsychotic medication would be the only effective treatment available.

■ Given the above conclusion, the court necessarily rejects the magistrate's conclusion that FMC may not forcibly administer antipsychotic drugs to Bryant against his will absent an emergency or a determination of incompetency. The court, however, emphasizes the narrow holding of

---

**2.** With respect to the question of balancing, the court declines to adopt the approach of the Tenth Circuit in *Bee v. Greaves,* 744 F.2d 1387 (10th Cir.1984). In *Bee v. Greaves,* the court set forth balancing guidelines, concluding that absent an emergency, forcible medication with antipsychotic drugs violates an inmate's due process rights. As noted above, the Supreme Court in *Youngberg v. Romeo, supra,* directed that the courts are not to do the balancing of interests, but need only assure that professional judgment was in fact exercised.

this case. Contrary to the position of the United States, the court does not conclude that once the need for psychiatric treatment is established pursuant to 18 U.S.C. § 4245, the Bureau of Prisons may provide whatever treatment it feels appropriate. Admittedly, courts should defer to the expertise of prison administrators and mental health professionals. "This is not to say that [such professionals] enjoy unfettered discretion in forcibly medicating [inmates]. Indeed, at a minimum, an opportunity for exercise of professional judgment must be provided." *Project Release v. Prevost,* 722 F.2d at 981.

The United States has not come forward with proof of any particular procedures employed by FMC in determining whether to forcibly administer antipsychotic medication. As such, the court is not in a position to make a blanket determination as to whether FMC in all cases may forcibly administer antipsychotic drugs consistent with due process. In the absence of definite procedures, the court simply cannot say that professional judgment in fact will be exercised in all cases and due process thereby assured. *See United States v. Leatherman,* 580 F.Supp. 977, 980 (D.D.C. 1983), *appeal dismissed* 729 F.2d 863 (D.C. Cir.1984). *Compare Project Release v. Prevost,* 722 F.2d 960 (2d Cir.1983) (New York State Regulations consistent with due process); *Rennie v. Klein,* 720 F.2d 266 (3d Cir.1983) (New Jersey regulations consistent with due process). Moreover, the court is not convinced that 18 U.S.C. § 4245 will provide adequate constitutional protections in all cases. As the United States itself asserts, § 4245 procedures address only the question of whether a federal inmate suffers from a mental disease or defect and requires treatment in a suitable facility. The statutory procedures are not designed to allow consideration of a particular type of treatment.

Accordingly, IT IS ORDERED that:

1. Respondent, George J. Bryant, is hereby found to be presently suffering from a mental disease or defect which requires that he be committed to the custody of the Attorney General for care and treatment.

2. The request of petitioner United States for an order authorizing the forcible administration of medication to George Bryant is granted.