**UNITED STATES of America, Petitioner,**

v.

**Tonny Gene HORNE, Respondent.**

**Civil No. 4–96–814.**

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 23, 1997.

Mary Trippler, Assistant United States Attorney, Office of the United States Attorney, Minneapolis, MN, for plaintiff.

Robert D. Richman, Assistant Federal Defender, Office of the Federal Public Defender, Minneapolis, MN, for defendant.

### ORDER ADOPTING REPORT

### AND RECOMMENDATION

### OF THE MAGISTRATE JUDGE

TUNHEIM, District Judge.

This matter is before the Court upon respondent Tonny Horne's objections to the Report and Recommendation of the United States Magistrate Judge John M. Mason dated December 18, 1996. The matter came before the Magistrate Judge on the United States' Petition to Determine Present Mental Condition of an Imprisoned Person under 18 U.S.C. § 4245. The petition alleged that respondent is presently suffering from a mental disease or defect and is in need of custody and care or treatment in a suitable psychiatric facility and that respondent has refused transfer to the Mental Health Unit at the Federal Medical Center in Rochester, Minnesota, for such care and treatment.

The Magistrate Judge granted respondent's request for additional time to prepare his response and conducted an evidentiary hearing. The Report and Recommendation submitted to the Court is a thorough and detailed review of the Magistrate Judge's findings of fact and credibility determinations in light of the applicable legal standards. The Court has conducted a *de novo* review of the record and has considered respondent's objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and D.Minn. LR 72.1(b)(2). The Court agrees with Magistrate Judge Mason's conclusions and therefore adopts the Report and Recommendation.

Based upon all of the files, records and proceedings herein, the Court **OVERRULES** the objections of petitioner [Docket No. 14] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 12].

**IT IS HEREBY ORDERED** that:

1) The United States' Petition to Determine Present Mental Condition of an Imprisoned Person under 18 U.S.C. § 4245 [Docket No. 1] is **GRANTED**; and

2) The Court finds that the respondent is suffering from schizophrenia, a mental disease or defect for the treatment of which he is in need of custody for care or treatment at a suitable facility;

3) The Court finds that the Federal Medical Center–Rochester is a suitable facility at which to treat the respondent's mental disease or defect; and

4) The respondent is committed to the custody of the United States Attorney General, who shall hospitalize the respondent for treatment at the Federal Medical Center–Rochester.

## REPORT AND RECOMMENDATION

### INTRODUCTION

MASON, United States Magistrate Judge.

On August 16, 1996, the United States filed a Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1]. The Petition alleges that the Respondent Tonny Horne is presently suffering from a mental disease or defect for the treatment of which he is in need of custody and care in a suitable psychiatric facility. The Petition further alleges that the Respondent has refused to be transferred to the Mental Health Unit at the Federal Medical Center in Rochester, Minnesota ("FMC–Rochester") for care and treatment. The Respondent is a federal prisoner serving a 58–month sentence for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(b)(1)(A), and use of a firearm in a drug trafficking crime in violation of 18 U.S.C. § 924(c). The Respondent is currently scheduled for release on July 17, 1997. He is presently housed in seclusion at the Mental Health Building at FMC–Rochester. The Respondent has been held in seclusion status for all but eight days of his incarceration at FMC–Rochester.

On November 20, 1996, a hearing was held at FMC–Rochester to determine whether the Respondent is suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable psychiatric facility. The time of the hearing was postponed until November 20 at the request of the Respondent to permit full preparation. The Court allowed additional time following the hearing for the parties to file memoranda. Mary Trippler, Esq., appeared on behalf of the United States; Robert Richman, Esq., appeared on behalf of the Respondent, who was personally present. The Court heard testimony from the Respondent and psychologist Mary Alice Conroy, Ph.D. Six exhibits were also introduced into evidence at the hearing.

This matter is now before the Court on the Petition of the United States to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1]. Based upon all of the files, records, and proceedings herein, this Court finds that the Respondent is suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment at a suitable facility. The Court further finds that FMC–Rochester is a suitable facility at which to treat the Respondent's mental illness. Consequently, the Court recommends that the Petitioner's Petition be granted, that the Respondent be committed to the custody of the Attorney General, and that the Attorney General hospitalize the Respondent at FMC–Rochester.

### FINDINGS OF FACT/REPORT

#### Applicable Law

Under 18 U.S.C. § 4245, a prisoner who is serving time in a federal prison may not be transferred to a mental hospital without the prisoner's consent or a court order. *United States v. Watson*, 893 F.2d 970, 975 (8th Cir.), *vacated in part on reh'g on other grounds by United States v. Holmes*, 900 F.2d 1322 (8th Cir.), *cert. denied, Watson v. United States*, 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990). If the prisoner objects to being transferred, the court must order a hearing to determine if there is "reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility." 18 U.S.C. § 4245(a); *United States v. Jones*, 811 F.2d 444, 447 (8th Cir.1987). "If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4245(d). The Attorney General must then hospitalize the prisoner "for treatment in a suitable facility until he is no longer in need

of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier." *Id.*

The statute thus requires the Court to determine the answer to three questions: Is the Respondent suffering from a mental disease or defect? If so, is the Respondent in need of custody for care or treatment of that disease or defect? If so, is the proposed facility a suitable facility? For the reasons set forth below, this Court concludes that the answer to all of these questions is yes.

The parties also submitted extensive argument concerning whether treatment of the Respondent with psychotropic medications would be proper. For the reasons set forth below, it is concluded that this question is not presently before the Court. If the physician/psychiatrist responsible for Respondent's care concludes that such treatment is appropriate, there are administrative and judicial processes available for Respondent to challenge that decision at that time.

## I. Respondent Is Suffering from a Mental Disease or Defect for the Treatment of Which He Is in Need of Custody for Care or Treatment in a Suitable Facility

### A. The Respondent Is "Suffering from a Mental Disease or Defect"

■ At the November 20, 1996 hearing, an experienced psychologist, Dr. Mary Alice Conroy, testified that the Respondent suffers from schizophrenia. The essential features of schizophrenia are the presence of characteristic psychotic symptoms during the active phase of the illness and a decreased level of function in areas such as social relations. *Watson*, 893 F.2d at 972 n. 2. Psychotic symptoms may include delusions, hallucinations, incoherence, catatonic behavior, or flat or inappropriate affect (facial expressions). *Id.* Paranoid schizophrenia is one type of schizophrenia, the essential feature of which is a preoccupation with a set of systematized delusions or frequent auditory hallucinations related to a single theme. *Id.* Bizarre delusions, which usually occur in schizophrenia, involve phenomena that one would regard "as totally implausible, such as the belief that a

person is being controlled by a dead person." *Id.* at 973 n. 6. Prominent hallucinations and bizarre delusions are not present in a less serious "delusional disorder," the essential feature of which is "the presence of a persistent, nonbizarre delusion that is not due to any other mental disorder, such as schizophrenia." *Id.* "Nonbizarre delusions involve situations that can occur in real life, such as the belief that a person is being followed or poisoned." *Id.* Dr. Conroy testified that the Respondent, a 25–year–old male, is in his first full-blown psychotic episode of schizophrenia.

This Court found Dr. Conroy to be a credible witness. She has a Ph.D. from the University of Houston in Clinical Psychology. She is a Diplomate in Forensic Psychology and is board certified by the American Board of Professional Psychology. At the time of the evidentiary hearing, Dr. Conroy was the Director of Forensics at FMC–Rochester. She has been employed as a psychologist for the Bureau of Prisons for over 19 years, and she has been evaluating mentally ill patients since 1979. In the course of evaluating the Respondent for the presence of a mental illness, Dr. Conroy reviewed the Respondent's medical and central files and met with the Respondent on eight separate occasions. At the hearing, Dr. Conroy indicated that she is leaving FMC–Rochester in December to direct a forensic doctoral program as an associate professor at Sam Houston State University.

The Court is persuaded that the Respondent is suffering from schizophrenia based upon Dr. Conroy's psychological report and her testimony at the hearing. Dr. Conroy testified that the Respondent exhibits three symptoms of schizophrenia, and the Court finds that the presence of each of those symptoms support Dr. Conroy's conclusion that the Respondent is suffering from schizophrenia. The Respondent is delusional and some of his delusions are properly classified as "bizarre" ones. *See* Evidentiary Hearing Transcript, p. 43. The record shows that the Respondent believes that he is being bombarded with "rays" directed at him by unseen forces (perhaps by the Pittsburgh Steelers), that spikes are being driven through his

feet, that his food is being poisoned, that he has been electrocuted and burned, and that his family and inmates and staff at FMC–Rochester are conspiring against him.

These facts support Dr. Conroy's conclusion that the Respondent is delusional and has a serious mental illness. *See United States v. Veltman,* 9 F.3d 718, 719–20 (8th Cir.1993) (district court's 18 U.S.C. § 4245 commitment order affirmed where a forensic psychologist testified that inmate suffered from "schizophrenia of the paranoid type, with both paranoid and grandiose delusional thinking" with "significant erotomania" based upon the "unrealistic and delusional-based belief that one has a romantic relationship with a disinterested third party"), *cert. denied,* 511 U.S. 1044, 114 S.Ct. 1572, 128 L.Ed.2d 216 (1994); *Watson,* 893 F.2d at 976 (district court did not err in finding that federal prisoner suffered from mental disease or defect where inmate "exhibited signs of ... delusional thinking"); *United States v. Brown,* 1992 WL 90277 (4th Cir. May 4, 1992) (unpublished op.) (where two psychiatrists testified at 18 U.S.C. § 4245 hearing that prisoner suffers from a schizophrenic disorder and has delusional thoughts, the Fourth Circuit affirmed the district court's finding that the prisoner was in need of custody for care or treatment). The record and the Respondent's own testimony also indicate that the Respondent believes that, despite his obesity (he once weighed in excess of 400 pounds), he is a world class basketball player and a candidate to play in the National Basketball Association. *See* Gov't Ex. 2; Gov't Ex. 3 (Progress Notes of 11/9/96, 11/10/96, 11/12/96, 11/15/96, 11/16/96, 11/18/96, and 11/19/96).

Second, the Court finds that the Respondent has frequent auditory and visual hallucinations. Dr. Conroy testified that Respondent has been seen talking and gesturing to people or forces in his cell when alone. The Respondent has stated that nurses have left their voices in his cell, and that he hears men talking to him in his cell and calling him names. *See* Evidentiary Hearing Transcript, pp. 12–14; Gov't Ex. 3 (Progress Notes of 11/8/96, 11/12/96, 11/14/96 and 11/15/96). Hallucinations are a common symptom of schizophrenia and support Dr. Conroy's determination that the Respondent has that mental illness.

Third, the Court finds that the Respondent has disorganized thought processes. The Respondent's speech is rambling, and he uses frequent neologisms like that people are "accidental" and "unfoundated" and that people are of the "gaming type" or are "gaming with medication." *See* Gov't Ex. 2. This kind of speech pattern is common in people suffering from schizophrenia and again supports Dr. Conroy's belief that the Respondent is suffering from that disease. *See United States v. Baker,* 45 F.3d 837, 848–50 (4th Cir.) (Widener, J., dissenting) (although inmate did not contest on appeal that he was in need of mental health treatment, one appellate judge emphasized that "there is no doubt that the record supports the conclusion that Baker is suffering from a mental disease or defect and that he is in need of custody for care or treatment" where the evidence showed that Baker was a schizophrenic who engaged in "inappropriate behavior" and whose speech was "a mixture of words and phrases that didn't connect with one another"), *cert. denied,* —— U.S. ——, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995); *United States v. Brown,* 1992 WL 90277 (4th Cir. May 4, 1992) (unpublished op.) (where prisoner's testimony at the hearing was "rambling," the Fourth Circuit affirmed the district court's finding that prisoner was in need of custody for care or treatment under 18 U.S.C. § 4245).

The Respondent cites several other doctors' written notations in his file to support the conclusion that he is not suffering from a mental disease or defect. A psychologist at FCI–Sandstone, where Respondent was incarcerated from September 1993 to April 1994, concluded that Respondent's "bizarre behaviors" were "non-psychotic" and that Respondent's psychotic behavior was "feigned." Def.Ex. 2 (3/25/94 notation). A psychologist at FCI–LaTuna, where Respondent was confined from April 1994 to September 1994, concluded that Respondent's behaviors "appear to be those of a person who is attempting to feign mental illness." Def.Ex. 2 (6/10/94 and 6/16/94 notations). At

FCI–Florence, where Respondent was incarcerated from September 1994 to April 1995, another doctor found psychosis absent and "no significant mental problems." Def.Ex. 2 (9/26/94 and 11/17/94 notations). At FCI–Pekin, where Respondent was confined from April 1995 to May 1996, three additional doctors agreed that Respondent "was not in need of psychiatric medications." Def.Ex. 2 (6/27/95, 7/25/95, 9/5/95, 10/2/95, 10/30/95 and 1/22/96 notations).

The Respondent points out that it was not until he was transferred to FCI–Oxford, where he was incarcerated from May 1996 until being transferred to FMC–Rochester on July 3, 1996, that he was diagnosed as having a mental illness. The psychological staff at FCI–Oxford came up with three separate diagnoses: (1) delusional disorder, paranoid type, (2) schizophrenia, paranoid type, and (3) schizoaffective disorder. Def.Ex. 2 (6/20/96, 6/6/96, and 7/3/96 notations). *See Watson*, 893 F.2d at 975 n. 1 (although the term "schizoaffective disorder" is used in many ways, "[i]t is now categorized as a disturbance during which there is either an episode of major depression or manic syndrome concurrent with symptoms of schizophrenia").

The Court finds this documentary evidence unpersuasive. The doctors who wrote the earlier notations had not examined the Respondent as recently as Dr. Conroy had. They did not base their conclusions on Respondent's present mental condition and their opinions were not subjected to cross-examination at the hearing. Dr. Conroy further testified that her diagnosis of schizophrenia is consistent with the prior notations in the Respondent's medical records and central file because this is his first full-blown psychotic episode. Dr. Conroy testified that the prior notations are reflective of symptoms of schizophrenia, even though that diagnosis was not made until recently. Moreover, this Court finds credible the testimony of Dr. Conroy in which she opined that it is "highly improbable" that the Respondent is feigning a mental illness because of the difficulty involved in malingering a thought disorder.

The Respondent's failure to introduce any expert medical testimony at the hearing to contradict Dr. Conroy's diagnosis of schizophrenia lends further credence to the Court's conclusion that the Respondent has that mental disease or defect. *See United States v. Steil*, 916 F.2d 485, 488 (8th Cir.1990) (where mental health professionals found inmate to be mentally ill, the Eighth Circuit emphasized that "there is no medical opinion to the contrary in the record before us" in affirming the district court's conclusion that the inmate was mentally ill and dangerous under 18 U.S.C. § 4246).

**B. The Respondent Is "in Need of Custody for Care or Treatment"**

Although 18 U.S.C. § 4245(d) does not define when a prisoner is "in need of custody for care or treatment," courts have found that prisoners suffering from schizophrenia are "in need" of treatment under 18 U.S.C. § 4245 where a diagnosis is properly supported by psychological or psychiatric testimony. *United States v. Baker*, 45 F.3d 837 (4th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995); *United States v. Tyus*, 1992 WL 51312 (4th Cir. Mar. 19, 1992) (unpublished op.) (where two experts testified that prisoner suffered from schizophrenia and needed treatment, the Fourth Circuit affirmed the district court's determination that the prisoner should receive treatment); *see also United States v. Martinez*, 1992 WL 214483 (4th Cir. Sept. 2, 1992) (unpublished op.) (where psychologist testified that prisoner suffered from schizoaffective disorder and required custodial treatment, the Fourth Circuit upheld the district court's determination that the prisoner should receive treatment). Since Respondent suffers from schizophrenia, he is in need of treatment under the analysis of these authorities.

In *Baker*, the government filed a motion pursuant to 18 U.S.C. § 4245 in the Eastern District of North Carolina to determine the present mental state of Leroy Baker, an inmate at the Federal Correctional Institution at Butner, North Carolina ("FCI–Butner"). The evidence presented by the government at Baker's commitment hearing

established that, while at FCI–Butner, Baker was diagnosed as a paranoid schizophrenic and began refusing all medication. Baker required "continual seclusion due to inappropriate behaviors and florid psychosis," and the FCI–Butner mental health staff determined that Baker was "in need of placement in a suitable facility where involuntary treatment proceedings could begin." *Baker,* 45 F.3d at 841. The federal district court found that the government had established, by a preponderance of the evidence, that Baker suffered from a mental disease or defect as a result of which he was in need of custody for care or treatment. Baker did not challenge that finding on appeal. *Id.*

The authorities have not analyzed what it means exactly to be "in need of custody for care or treatment." Defining that phrase is difficult because the word "need" is a relative and flexible term and its meaning varies with the circumstances of its use. *State ex rel. Banking Commission v. Avery County Bank,* 14 N.C.App. 283, 188 S.E.2d 9 *cert. denied,* 281 N.C. 514, 189 S.E.2d 35 (1972); *Siccardi v. State,* 59 N.J. 545, 284 A.2d 533, 539 (1971). There appears to be a continuum of need based on the various definitions of "need," which range from something that is merely beneficial to something that is absolutely required. *Compare Black's Law Dictionary* 1031 (6th ed. 1990) ("need" means "to have an urgent or essential use for (something lacking); to want, require") (*citing City of Dayton v. Borchers,* 13 Ohio Misc. 273, 232 N.E.2d 437, 440 (1967)) *with American State Bank of Williston v. State Banking Board,* 289 N.W.2d 222, 227 (N.D.1980) (the term "need" is not akin to "an absolute necessity") *and Cavagnaro v. Hanover Ins. Co.,* 236 N.J.Super. 287, 565 A.2d 728, 731 (1989) ("A medical 'need' is shown if the treating physician orders tests based upon a sincere belief that the procedure, even if controversial, will further the diagnosis, or treatment, of a patient's condition.").

The Respondent argues that 18 U.S.C. § 4245 is limited to treatment that is *needed,* not that which may be merely *beneficial.* *See* 18 U.S.C. § 4245(d). He argues that a showing of dangerousness is required before a prisoner may be committed under section 4245, and that Petitioner has failed to establish that the Respondent is so harmful to himself or others that he needs to be involuntarily committed. He emphasizes that the rights of prisoners to medical care has been limited to treatment that is necessary, not care which may merely be "beneficial." *E.g., United States v. DeCologero,* 821 F.2d 39, 42–43 (1st Cir.1987); *Jackson v. Fair,* 846 F.2d 811, 817 (1st Cir.1988); *Ross v. Kelly,* 784 F.Supp. 35, 44–45 (W.D.N.Y.1992), *aff'd,* 970 F.2d 896 (2d Cir.1992), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992); *see also Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir.1981) ("In balancing the needs of the prisoner against the burden on the penal system, the district court should be mindful that the essential test in one of medical necessity and not one simply of desirability.").

The Petitioner contends that 18 U.S.C. § 4245, unlike 18 U.S.C. § 4246, does not require a showing of dangerousness. Section 4246 only applies to individuals who are due for release from federal custody either because they have been found not competent to stand trial, because the charges against them have been dropped solely because of mental illness, or because they have completely served their sentences of imprisonment. *Baker,* 45 F.3d at 840 n. 1. In a section 4246 commitment proceeding, the government must prove by "clear and convincing evidence" that "the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(d).

 Although the Court finds that treatment under 18 U.S.C. § 4245 must be more than merely "beneficial," the Court need not decide whether a prisoner can be involuntarily committed for treatment pursuant to 18 U.S.C. § 4245 if a showing of future dangerousness is not made. *See United States v. Bryant,* 670 F.Supp. 840, 844 (D.Minn.1987) (emphasis added) (forcible psychiatric treatment "may be necessary for an inmate's treatment *or* to maintain security and protect inmates and staff from vio-

lence"). The resolution of that question is unnecessary because the Court finds that the Respondent's mental illness is preventing him from being removed from segregation and placed in the general prison population at FMC–Rochester. The Court finds that, unless the Respondent's mental illness is treated, he would pose a danger to prison staff and his fellow inmates if he is removed from segregation. *See Woodall,* 648 F.2d at 272 (holding that one factor a court should consider in deciding whether psychiatric care for a prisoner is medically necessary is "the extent to which the prisoner presents a risk of danger to himself or other inmates"); *Riggins v. Nevada,* 504 U.S. 127, 135–36, 112 S.Ct. 1810, 1815, 118 L.Ed.2d 479 (1992) (due process allows a mentally ill inmate to be treated involuntarily with antipsychotic drugs where there is a determination that "the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest").

The Respondent has had problems functioning in the prison environment since being incarcerated in September 1993, and the Respondent has displayed a series of behaviors that have continually made him a management problem. His conduct has been written up in more than twenty disciplinary reports, and he has been transferred from one institution to another throughout his term of imprisonment. Before being transferred to FMC–Rochester, the Respondent served time at FCI–Sandstone, FCI–LaTuna, FCI–Florence, FCI–Pekin, and FCI–Oxford. While confined at FMC–Rochester, the Respondent has been held in seclusion status for all but eight days because of his highly intimidating conduct. Being placed in seclusion is the most restrictive of the four types of confinement that are available at FMC–Rochester. FMC–Rochester also has (1) an open or general population area, (2) a semi-open unit, and (3) an observation room for persons with self-destructive behaviors.

The Petitioner established at the evidentiary hearing that the FMC–Rochester staff cannot control the Respondent in the general prison population, and that the Respondent is being held in seclusion at FMC–Rochester to prevent the Respondent from endangering others. Dr. Conroy specifically testified that Respondent's mental illness is preventing him from being placed in FMC–Rochester's general population, and that the Respondent "could hurt someone" if placed in the general population. During the eight days that the Respondent was not in seclusion at FMC–Rochester, the Respondent's behavior demonstrates that he would present a danger to staff and his fellow inmates if his mental illness is left untreated and he is placed in the general inmate population.

On July 19, 1996, after being placed in the semi-open unit on July 17, 1996 on a trial basis, the Respondent became very loud and agitated. He shouted that he was surrounded by "incompetent people," and said that he did not need to follow the rules or the directions of the staff. This conduct necessitated his return to the isolation unit. On July 25, 1996, FMC–Rochester clinicians once again attempted to transfer Respondent to the semi-open unit. On August 1, 1996, however, Respondent again became very loud and agitated. Without provocation, he suddenly shouted at the nursing staff, "Who the fuck do you think you are? Who's going to stop these little men from shooting me with the reflectors? They are causing me injury and you could give a fuck less." He then declared that all the nurses would die because they were "irrelevant." This threatening behavior again necessitated that Respondent be returned to isolation. There is also evidence in the record that the Respondent threw an unknown substance at someone and once struck his closed fist out of his cell's food slot, although he did not cause any serious injury in either instance.

▉▉▉ The Court's legal conclusion is derived from well-settled legal principles. The Eighth Amendment imposes upon prison officials the duty to provide humane conditions of confinement, and this duty requires those officials to protect prisoners from violence at the hands of other prisoners and self-inflicted harm or suicide. *Jensen v. Clarke,* 73 F.3d 808, 810 (8th Cir.1996); *Reed v. Woodruff County,* 7 F.3d 808, 810 (8th Cir.1993). Moreover, prisoners do not have a due process right to remain in isolation or segregation to avoid a particular form of treatment,

such as the forcible administration of psychotropic medications. *See Watson,* 893 F.2d at 982. Accordingly, if a prisoner whose mental illness was left untreated would pose a danger to himself or others if placed in the general prison population, the Court finds that treatment is needed within the meaning of 18 U.S.C. § 4245.

The Respondent relies primarily on two unpublished decisions from the District of Minnesota to support his assertion that he is not in need of custody for care or treatment. *See United States v. Alvarez–Lopez,* Civ. No. 4–94–440 (D.Minn. June 30, 1995); *United States v. Zelson,* Civ. No. 3–92–765 (D.Minn. Jan. 27, 1993). In *Alvarez–Lopez,* U.S. District Judge David S. Doty reversed the magistrate judge's recommendation that the respondent was in need of custody for care or treatment. In that case, the government objected to a finding that had been made which prohibited the administration of psychotropic drugs without the respondent's consent. The respondent, Pedro Alvarez–Lopez, a seventy-year-old inmate confined at FMC–Rochester, believed that lasers were shooting at him from electrical sockets, smoke detectors and sprinkler systems. After a staff psychologist diagnosed Alvarez–Lopez as suffering from a mental illness which prevented him from being housed in the open diagnostic unit, the government filed a petition pursuant to 18 U.S.C. § 4245 to determine Alvarez–Lopez's mental condition. At the evidentiary hearing, the chief of psychiatry at FMC–Rochester testified that Alvarez–Lopez suffered from an organic psychotic mental disorder which required treatment with psychotropic drugs. Alvarez–Lopez testified that he did not want to take medicine because he had seen medication turn other inmates into "zombies."

In reversing the magistrate judge's ruling that Alvarez–Lopez was in need of custody for care or treatment, Judge Doty found that Alvarez–Lopez was not "so harmful to himself or others that he needs to be involuntarily committed." Judge Doty further emphasized that "there is no evidence that [Alvarez–Lopez] has ever assaulted or harmed any individual." The issue of whether Alvarez–Lopez could be forcibly medicated was the major point of contention in Alvarez–Lopez's section 4245 proceeding. In fact, Judge Doty's decision in *Alvarez–Lopez* focused almost exclusively on whether the government could forcibly medicate Alvarez–Lopez. The issue of whether Alvarez–Lopez was "in need of custody for care or treatment" was not considered in great detail because testimony at the evidentiary hearing established that Alvarez–Lopez had "cooperated on several levels with professional efforts to treat his mental illness" while he was incarcerated at FMC–Rochester.

Unlike the situation in *Alvarez–Lopez,* the parties' testimony at Respondent's section 4245 proceeding conclusively showed that Respondent has a mental illness and would be a danger to others if he were left untreated and removed from the segregation unit. Unlike the non-threatening 70-year-old man involved in *Alvarez–Lopez,* the Respondent here is a 25-year-old man of considerable weight who would be difficult to restrain, who has threatened FMC–Rochester staff, and who has shown a propensity for aggressive conduct. Moreover, in *Alvarez–Lopez,* Judge Doty was not called upon to analyze the distinction between what the government must show to establish that an inmate is "in need of custody" under 18 U.S.C. § 4245(a) versus what the government must show to be able to forcibly medicate an inmate under federal administrative safeguards which are in place regulating the administration of psychiatric medication. *See* 28 C.F.R. § 549.40–549.43.

In *Zelson,* U.S. Magistrate Judge Floyd E. Boline refused to grant the government's 18 U.S.C. § 4245 petition, finding that the government had failed to establish that Arthur Zelson's condition is "so severe that he is in need of forced treatment through an involuntary commitment." Magistrate Judge Boline's Report and Recommendation was adopted by United States District Judge Richard H. Kyle on February 12, 1993. At the evidentiary hearing, Dr. L. Thomas Kucharski diagnosed Zelson as having a "severe obsessive compulsive disorder" characterized by "obsessive ritualistic thoughts or intrusive thoughts that are unrealistic" and "lead to a

variety of compulsive, ritualistic behaviors." Dr. Kucharski testified that Zelson faced a risk of assault by other inmates due to his appearance and behaviors, and that Zelson had told him that he (Zelson) did not want to be medicated. Zelson had a history of intentionally violating minor disciplinary rules in order to get placed into disciplinary segregation. When Dr. Kucharski told Zelson that he wanted to place him on an open unit, Zelson said that if he could not cope with the open unit, "he would come up with ways to get them to put me back in segregation."

Significantly, during the course of the three-hour evidentiary hearing, Zelson did not show any symptoms of his alleged obsessive compulsive disorder. Magistrate Judge Boline therefore ruled that "[t]he record will not support a finding that [Zelson] currently exhibits any ritualistic behaviors which are so harmful to himself or others that he needs immediate and involuntary treatment." Unlike in *Zelson*, where the court found that the prisoner "was able to function in a normal manner despite the stress of the hearing" and "did not manifest any symptoms of his alleged obsessive compulsive disorder" at the hearing, the Respondent appeared to be mentally ill at the hearing. Likewise, whereas the *Zelson* court found that Zelson would not be a danger to himself or others if he was not forcibly medicated, the Respondent poses a substantial risk of endangering FMC–Rochester staff and inmates if placed in an open or semi-open unit and his mental illness is not treated. Like the hearing in *Alvarez–Lopez*, the hearing in *Zelson* also focused largely on whether the inmate could be forcibly medicated. For example, the inmate in *Zelson* testified that he was "fundamentally opposed" to the use of drugs, and Magistrate Judge Boline was "impressed by the candor and sincerity" of the inmate's Christian Science beliefs which would reject the use of drugs. In contrast, this Court declines to address at this time whether the Respondent may be forcibly medicated. *See infra.*

Finally, this Court simply observes that each case presented to the Court will ultimately turn upon the individual facts and nuances presented by the testimony, and by the opinions of the medical professionals. In this case, for all of the reasons set forth, it is concluded that Respondent is in need of custody for care and treatment of a mental disease or defect.

## C. FMC–Rochester Is a "Suitable Facility"

FMC–Rochester is a suitable facility for the Respondent to receive care or treatment. FMC–Rochester is a fully accredited hospital providing a wide range of medical and therapeutic options to incarcerated inmates. The housing options at FMC–Rochester range from seclusion to open ward. Dr. Conroy testified that the Respondent could not get the medical attention that he needs at a regular prison facility. In addition, Dr. Conroy gave her expert opinion that FMC–Rochester is an appropriate facility at which the Respondent's mental illness can be treated. Respondent offered no evidence to prove that FMC–Rochester is an inappropriate facility for him. Dr. Conroy testified that, because Respondent is relatively young and this is his first full-blown psychotic episode, the Respondent's schizophrenia may be able to be treated quite effectively.

## II. The Court Should Not Consider at This Time Whether the Government May Forcibly Administer Psychotropic Medications to Respondent

At the evidentiary hearing, Dr. Conroy conceded that the Respondent's treatment plan, if he is involuntary committed, will almost certainly involve the administration of psychotropic medications. But this was conjecture on her part, since she was not examining Respondent for the purpose of determining a course of treatment. Psychotropic medications, such as Haldol or Respiradol, are the generally accepted treatment course for mental illnesses such as schizophrenia. *Id.* at 973 & n. 5, 978. "Although these drugs do not cure schizophrenia, they control the symptoms, often permitting patients to function outside of a hospital setting." *Id.* at 978. Antipsychotic drugs are "mind-altering." *Mills v. Rogers*, 457 U.S. 291, 293 n. 1, 102 S.Ct. 2442, 2445 n. 1, 73 L.Ed.2d 16 (1982). They affect a patient's thoughts, moods and emotions. "Symptoms

such as delusions, hallucinations, and disruptive or withdrawn behavior are held in remission while the drug remains in the patient's bloodstream." *Watson,* 893 F.2d at 978.

The record indicates that the Respondent agreed to take psychotropic medications for two days, from October 25 to October 27, 1996, but has since steadfastly refused to take any psychotropic drugs. The Respondent is concerned about the side effects of those drugs (e.g., muscle spasms, parkinsonisms, depression, apathy, lip smacking, etc.). "Patients taking antipsychotic medications sometimes experience painful side effects, including muscle spasms, restlessness, agitation, and parkinsonisms." *Watson,* 893 F.2d at 978. Dr. Conroy stated that the side effects of psychotropic medications are often minimal or can be greatly minimized with proper medical supervision. It is undisputed that the Respondent has never before been treated with psychotropic medications for schizophrenia, and Dr. Conroy testified that it is unclear how the Respondent would respond to such drugs if treated with them.

The determination of whether the Petitioner may forcibly administer psychotropic drugs should be made only following the inmate's commitment under 18 U.S.C. § 4245. *See Bryant,* 670 F.Supp. at 843 (emphasis added) ("The precise issue presented ... involves consideration of the constitutional right of a federal inmate to refuse antipsychotic medication *following* the inmate's commitment for psychiatric care and treatment under 18 U.S.C. § 4245."). For example, in *Watson,* the United States filed a section 4245 petition alleging that a federal prisoner, Gale Watson, suffers from a manic depressive illness and an anti-social personality. *Watson,* 893 F.2d at 975. The district court agreed, and ordered that Watson be committed for treatment, including the forced administration of psychotropic drugs. On appeal, the Eighth Circuit first addressed whether Watson suffered from a mental disease or defect. It found that the conclusion "that Watson suffers from a mental disease is clearly plausible in light of the record before us." *Id.* at 976. Only because the federal district court granted the government's request that Watson be forcibly medi-

cated with psychotropic drugs did the Eighth Circuit even address Watson's claim that he had a constitutional right to refuse psychotropic medications. *Id.* Unlike the district court in *Watson,* this Court believes that it is premature to address whether the Respondent may be forcibly medicated.

The decision about whether or not to forcibly medicate Respondent will first be made by the Respondent's treating physician/psychiatrist. That decision is subject to review by medical professionals in an administrative due process hearing. *See* 28 C.F.R. § 549.43 ("[I]n order to administer treatment or psychotropic medication on an involuntary basis, further administrative due process procedures, as specified in this section, must be provided to the inmate."). This Court declines to address what the appropriate course of treatment is for Respondent's mental illness or whether the use of psychotropic medications is warranted. Section 4245 addresses only the question of whether a federal inmate may be transferred to a facility for psychiatric treatment. *Watson,* 893 F.2d at 976. It does not define "treatment," nor does it authorize the United States to forcibly administer psychotropic drugs whenever it believes appropriate. *Id.* (citing *Bryant,* 670 F.Supp. at 845).

The administrative due process procedures are set forth in 28 C.F.R. § 549.43. Except in emergency situations, those procedures "must be followed after a person is committed for hospitalization and prior to administering involuntary treatment, including medication." 28 C.F.R. § 549.43. Under the regulations, when a hospitalized inmate refuses to take prescribed psychotropic medication, the inmate will be scheduled for an administrative hearing and will not be medicated prior to the hearing. 28 C.F.R. § 549.43(a). "Staff shall provide 24–hour advance written notice of the date, time, place, and purpose of the hearing, including the reasons for the medication proposal." 28 U.S.C. § 549.43(a)(1). The inmate has the right to appear at the hearing, to present evidence, to have a staff representative, to request witnesses, and to request that witnesses be questioned by the staff representa-

tive or by the person conducting the hearing. 28 C.F.R. § 549.43(a)(2).

The hearing is conducted by a psychiatrist who is "not currently involved in the diagnosis or treatment of the inmate." 28 C.F.R. § 549.43(a)(3). "The treating/evaluating psychiatrist/clinician must be present at the hearing and must present clinical data and background information relative to the need for medication." 28 C.F.R. § 549.43(a)(4). The psychiatrist conducting the hearing shall determine "whether treatment or psychotropic medication ... is necessary because the inmate is dangerous to self or others, is gravely disabled, or is unable to function in the open population of a mental health referral center or a regular prison." The psychiatrist must prepare a written report regarding the decision. 28 C.F.R. § 549.43(a)(5). The inmate must be given a copy of that report and may submit an appeal to the institutional mental health division administrator regarding the decision within 24 hours of the decision. That administrator must review the psychiatrist's decision within 24 hours of the inmate's appeal. The administrator "shall ensure that the inmate received all necessary procedural protections and that the justification for involuntary treatment or medication is appropriate." 28 C.F.R. § 549.43(a)(6). Upon the request of the inmate, the staff representative must assist the inmate in preparing and submitting the appeal. *Id.* Absent a psychiatric emergency, medication will not be administered before the administrator's decision. 28 C.F.R. § 549.43(a)(7).

Although this Court could construe Respondent's objection to being forcibly medicated as a due process challenge to 28 C.F.R. § 549.43, the Court believes that it is premature to determine whether or not the Respondent may be forcibly medicated. No decision has been made by Respondent's physician as to whether psychotropic medication is appropriate. If that decision is made, Respondent may or may not agree. If he disagrees, the proper procedure is to reserve judgment on whether the government can forcibly medicate him with psychotropic drugs until after the required administrative due process hearing has been held. At that time, the Respondent's treatment plan will

be known and the record will be more fully developed as to whether or not he should be forcibly medicated.

Under *Washington v. Harper,* 494 U.S. 210, 227–30, 110 S.Ct. 1028, 1039–41, 108 L.Ed.2d 178 (1990), "forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness." *Riggins v. Nevada,* 504 U.S. 127, 135, 112 S.Ct. 1810, 1815, 118 L.Ed.2d 479 (1992). Accordingly, in the appropriate procedural context, prisoners can challenge decisions that they be medicated against their wishes. For example, in *Cochran v. Dysart,* 965 F.2d 649 (8th Cir.1992), a person in the custody of the Attorney General pursuant to 18 U.S.C. § 4246 brought an action challenging his continued commitment and forced medication with psychotropic drugs. The Eighth Circuit vacated the district court's dismissal of this action, and remanded the case back to the district court for that court to obtain and review documents referenced in a report of the reviewing psychiatrist that justified the involuntary medication. The *Cochran* court sought confirmation that the psychiatrist's reason for medicating the individual against his will was whether the inmate was dangerous to himself or others. *Id.* at 650–51. *But see Buckley v. Iowa State Penitentiary,* 1993 WL 105940 (8th Cir.1993) ("Buckley's claim that prison officials are forcing him to take medication is not cognizable in a habeas corpus petition. We modify the order of dismissal to be without prejudice to Buckley's raising this ... claim in an appropriate proceeding."). However, in this context, judicial review is appropriate when the Respondent has exhausted the administrative procedures of 28 C.F.R. § 549.43.

For the foregoing reasons,

IT IS HEREBY RECOMMENDED THAT:

1. The Petitioner's Petition to Determine Present Mental Condition of an Imprisoned Person Under 18 U.S.C. § 4245 [Docket No. 1] be granted;

2. The District Court find that the Respondent is suffering from schizophrenia, a mental disease or defect for the treatment of

which he is in need of custody for care or treatment at a suitable facility;

3. The District Court find that FMC–Rochester is a suitable facility at which to treat the Respondent's mental disease or defect; and

4. The Respondent be committed to the custody of the United States Attorney General, who shall then hospitalize the Respondent for treatment at FMC–Rochester.

Dated: Dec. 18, 1996.

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by January 2, 1997,** written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing **by January 2, 1997.**