965 F.2d 649
 3 NDLR P 16
 Robert COCHRAN, Appellant,
v.
Dorsey DYSART, Doctor; Don Butts, Doctor; Clayton
Pettipiece, Doctor; Doctor Morgan; L.E. Dubois,
Regional Director, Bureau of Prisons;
E.H. Morris, Appellees.
 No. 91-2932.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 5, 1992.
Decided June 1, 1992.
 
 Robert Cochran, pro se.
 Alleen S. Castellani, Kansas City, Mo., argued, for appellees.
 Before McMILLIAN, WOLLMAN, and LOKEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert Cochran, who is in the custody of the Attorney General pursuant to 18 U.S.C. § 4246 (commitment beyond expiration of sentence due to mental defect), appeals from an order entered in the United States District Court for the Western District of Missouri dismissing his consolidated action challenging his continued commitment and forced medication with psychotropic drugs. We vacate the district court order and remand the case to the district court for further proceedings.
 
 
 2
 The magistrate judge liberally construed Cochran's complaint as challenging the right of prison officials to administer psychotropic drugs against his will. Citing Washington v. Harper, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (Harper ) (inmates possess "a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause of the Fourteenth Amendment"), the magistrate judge ordered defendants on February 12, 1991, to advise the court of the medical basis for their decision to medicate Cochran with psychotropic drugs, as well as the procedural safeguards they had provided Cochran prior to forcibly medicating him.
 
 
 3
 In response, defendants filed a copy of a March 1, 1991, involuntary-medication report indicating that on February 28, 1991, Cochran was notified that he would be granted a hearing to consider whether he should be given psychotropic medication. The report noted that Cochran was diagnosed as having schizophrenia, that he was being treated with "psychotropic medication," and that the reason for treatment was to "[c]ontrol symptoms of mental illness allowing for transfer to less restrictive quarters and participation in more programs." Attached to the report were written statements submitted on behalf of Cochran by Rabbi Diamond and Dr. Taub, who were unavailable to testify in person. Rabbi Diamond stated "Cochran has been to several of my groups at MCFP-Springfield, and has never been disruptive, violent, or a management problem. We have had several conversations and I am aware that he thinks he is a prophet.... [I]f there is some therapeutic reason to medicate him, rather than simply managerial (or theological), a care and treatment proposal should be first offered!" Dr. Taub's report indicated that he was a clinical psychologist who had treated Cochran "for a relatively long period of time." Dr. Taub did not state what treatment or medication he had given Cochran, if any, and he made no recommendation regarding these topics.
 
 
 4
 In addition, the report stated that the following documentary evidence was considered: Cochran's commitment order, "psychiatric/psychological reports submitted at the commitment hearing," "treatment proposal and justification," "alternative to medication," and "written statements of witnesses and written presentations of Mr. Cochran." It appears that only the written statements of Rabbi Diamond and Dr. Taub were filed with the district court.
 
 
 5
 In the "Findings" section of the report, "Yes" check marks appeared next to the following statements: "inmate suffers from a mental disorder"; "inmate does require psychotropic medication"; and "[m]edication is required because the inmate: is dangerous to himself or others," "is gravely disabled," "is unable to function in open population," and "is mentally ill and dangerous and medication is necessary to treat the mental illness causing dangerousness." Regarding specific information relied upon to support the findings, the report stated:
 
 
 6
 We relied upon past records which clearly show that patient suffers from delusions, ideas of reference and carries a diagnosis of paranoid schizophrenia. During interview [Cochran] displayed many of these same symptoms i.e. "all psychiatrists are devils." "My voice box contains neutrino particles which travel around the galaxy." ... Patient also suffers from delusions of grandiosity.
 
 
 7
 A "Yes" check mark also appeared next to the statement "Medication approved." The "Justification for medication" read:
 
 
 8
 According to treating psychiatrist, Dr. Gallinanes feels [Cochran] is dangerous to himself and others without medication. He also feels that [Cochran] is less agitated when on medication. When properly medicated [Cochran] has been able to function on open population. [The above-mentioned symptoms] respond to treatment with neuroleptic medication and will eventually help patient improve his reality testing.
 
 
 9
 The report was signed by "Dr. Jacobs," as the reviewing psychiatrist.
 
 
 10
 The magistrate judge recommended dismissal, concluding that Cochran had been afforded his Harper rights. Overruling Cochran's objections to the report and recommendation, the district court dismissed his consolidated action, without prejudice. This timely appeal followed.
 
 
 11
 Psychotropic drugs have provided the psychiatric community with an alternative to heavy sedation, seclusion, straightjackets, electroconvulsive therapy, and frontal lobotomies, but their use is not without controversy. The purpose of psychotropics is to change a patient's cognitive processes by altering the chemical balance in the brain; the drugs can have serious, even fatal, side effects. See Harper, 494 U.S. at 229, 110 S.Ct. at 1040-41. In Harper, the Supreme Court held that "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his [or her] will, if the inmate is dangerous to himself [or herself] or others and the treatment is in the inmate's medical interest." Id. at 227, 110 S.Ct. at 1039-40 (emphasis added).
 
 
 12
 Dr. Jacobs' March 1 report states that "Dr. Gallinanes feels [Cochran] is dangerous to himself and others without medication." Dr. Gallinanes' medical reports, however, are not in the record; there is no indication of the basis for Dr. Gallinanes' "feeling" or what "medication" Cochran allegedly cannot do without; and there is no other record evidence of dangerousness. We are unable to review Dr. Jacobs' decision without reviewing the documents--especially the medical records--upon which Dr. Jacobs relied in authorizing Cochran's involuntary psychotropic medication.
 
 
 13
 Moreover, we note that the stated "reason for treatment" on Dr. Jacobs' March 1 report read "[c]ontrol symptoms of mental illness allowing for transfer to less restrictive quarters and participation in more programs." The report also stated that, according to Dr. Gallinanes, psychotropics "will eventually help [Cochran] improve his reality testing," his delusions of grandeur "respond to treatment," and he is "less agitated when on medication." Under Harper, none of these reasons justifies forcibly medicating Cochran with potentially fatal psychotropic drugs.
 
 
 14
 Accordingly, we vacate the order of the district court and remand the case to the district court with instructions to obtain and review, within thirty days of this court's mandate, the documents referenced in Dr. Jacobs' report. We find no merit to Cochran's remaining arguments. Cochran's "motion for additional damages due to being moved pending habeas corpus petition under F.R.A.P. 22" is denied.
 
 
 15
 WOLLMAN, Circuit Judge, concurring specially.
 
 
 16
 I concur in the remand solely on ground that the record does not contain the documents referred to in Dr. Jacobs' report.
 
 
 17
 LOKEN, Circuit Judge, dissenting.
 
 
 18
 I respectfully dissent.
 
 
 19
 The issue on appeal is whether the district court erred in concluding that the decision to administer psychotropic medication complied with the due process standards of Washington v. Harper, 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). If this court requires confirmation that psychotropic medication is appropriate for Cochran because he is "dangerous to himself or others," we need look no further than our own closed files.
 
 
 20
 This court's closed files contain considerable information about Cochran's mental condition. In United States v. Cochran, 855 F.2d 857 (8th Cir.1988), we affirmed Cochran's commitment under 18 U.S.C. § 4246 in an unpublished per curiam opinion, agreeing, in the words of the statute, that the release of this chronic paranoid schizophrenic "would create a substantial risk of bodily injury to another person or serious damage to property of another." Our file in Cochran v. Conroy, No. 90-1635 (8th Cir. May 14, 1990), reflects that this was the fourth time we had been asked to review the legality of his involuntary psychiatric commitment. And in Cochran v. Turner, No. 91-2672 (8th Cir. Mar. 30, 1992), our recent unpublished per curiam opinion affirming the dismissal of Cochran's latest § 1983 suit stated that, "In September 1990, [Cochran] received an incident report for assaulting a staff member."
 
 
 21
 With this background, there cannot be the slightest doubt that the documentary evidence referred to in the involuntary-medication report established that Cochran is dangerous to others in the prison environment without such medication. In my view, the district court and the Bureau of Prisons have better things to do with their beleaguered resources than conduct a proceeding on remand for the purpose of formally restating the obvious. I would affirm the district court's dismissal without prejudice.