**UNITED STATES of America, Plaintiff,**

v.

**Howard McALLISTER, Defendant.[1]**

**Civil No. 493836–DSD/JMM.**

United States District Court,
D. Minnesota.

June 25, 1997.

---

1. When Howard McAllister filed his Motions for Review of Commitment Order and for Temporary Stay of Involuntary Medication, he used the caption from the file *United States of America v. Howard McAllister,* Civil No. 4:93–836 (DSD/JMM). Because an existing file was reopened, the Court will retain the Court's original caption. Fed.R.Civ.P. 10(a). Since Howard McAllister initiated this lawsuit by filing the above-referenced Motions, he is technically the Petitioner. However, he will be referred to herein as Respondent for sake of consistency with the original court caption.

Mary Trippler, Asst. U.S. Atty., Minneapolis, MN, for U.S.

Andrea George, U.S. Public Defenders Office, Minneapolis, MN, for respondent Howard McAllister.

## ORDER

DOTY, District Judge.

This matter is before the court upon the government's objections to a Report and Recommendation of United States Magistrate Judge John M. Mason dated March 31, 1997.

Based upon a de novo review of the record herein, the court adopts the magistrate judge's thorough and well-reasoned Report and Recommendation dated March 31, 1997. Accordingly, **IT IS HEREBY ORDERED** that:

1. The determination of the mental health administrator at FMC–Rochester, authoriz-

ing the forcible medication of respondent is reversed and remanded for further proceedings, if warranted, consistent with this order.

2. Respondent's motions for a temporary stay of involuntary medication (Docket Nos. 13 & 14) are denied.

3. The order of January 29, 1997, granting respondent's motion for a temporary stay of involuntary medication (Docket No. 15), is vacated.

4. Respondent's motion for appointment of a health care guardian (Docket No. 19) is denied.

## REPORT AND RECOMMENDATION

### PROCEDURAL HISTORY

MASON, United States Magistrate Judge.

The procedural history of this case is set out in the Report and Recommendation issued in this matter on March 10, 1997. [Docket No. 22]. For purposes of this Report and Recommendation, the following summary will suffice.

Respondent was retired from the Army in 1991 based on his psychiatric condition. He was indicted on August 16, 1991, following an incident on July 24, 1991 in his dormitory room at Walter Reed Army Medical Center, when authorities came to advise him that he would have to move. He was charged with shooting an army officer in the chest at close range, and shooting and killing a police officer.

On February 9, 1993, Respondent was found incompetent to stand trial pursuant to the provisions of 18 U.S.C. § 4241. On March 8, 1994, this Court found by clear and convincing evidence that Respondent suffers from a mental disease or defect and that his release would create a substantial risk of injury to another person or property, and therefore ordered that Respondent be committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4246(d). [Docket No. 11].

On December 11, 1996, Respondent filed a motion seeking release from custody. [Docket No. 13]. On March 4, 1997, an evidentiary hearing was held at FMC–Rochester. Mary Trippler, Esq., appeared on behalf of the United States; Andrea George, Esq., appeared on behalf of Respondent, who was personally present. Following that hearing, in a separate Report and Recommendation, this Court concluded that Respondent should not be discharged from FMC–Rochester, because he had not established by a preponderance of the evidence that he had recovered from his mental disease or defect to such an extent that his release—with or without conditions—would no longer create a substantial risk to society. *See* 18 U.S.C. § 4246(e)(1)–(2). It was therefore recommended on March 10, 1997 that Respondent's Motion for Review of Commitment Order pursuant to 18 U.S.C. § 4247(h) be denied. [Docket No. 22]. Ruling on Respondent's other requested relief was reserved. No appeal was taken, and the Court's Report and Recommendation of March 10, 1997 was adopted by District Judge David S. Doty on March 27, 1997. [Docket No. 24].

In 1996, Respondent's treating clinicians at FMC–Rochester concluded that he should be administered psychotropic drugs. He objected and invoked his rights under the applicable regulations, Administrative Safeguards for Psychiatric Treatment and Medication, 28 C.F.R. §§ 549.40–.43. The last appeal in that process is to the institution mental health division administrator, who determined that the drugs could be forcibly administered to the inmate. Respondent seeks judicial review of that decision.

Now before the Court are Respondent's Motions for a Temporary Stay of Involuntary Medication. [Docket Nos. 13 & 14]. No hearing was scheduled by Respondent when his Motion was originally served [Docket No. 13], and no response was filed by the Government. On January 28, 1997, Respondent renewed his Motion. [Docket No. 14]. On January 29, 1997, this Court ordered that Respondent not be forcibly medicated pending "further Order of this Court," based upon the assertion in Respondent's moving papers that "the last time he received psychotropic medication, it resulted in his near death, causing failure of a vital organ,"[2] and the

2. Antipsychotic drugs, sometimes called "neuro-

leptics" or "psychotropic drugs," are medi-

absence of any response by the Government. [Docket No. 15].

■■■ The Order of January 29, 1997 was in error because a United States Magistrate Judge, while having the authority to issue a Report and Recommendation, lacks the power to issue such an Order. *See* 28 U.S.C. § 636(b)(1)(A)–(B). This Court also erred because it failed to require the Government to respond to the Motion prior to issuance of the Order. At the evidentiary hearing on March 4, 1997, it was established that counsel for Respondent was mistaken in alleging that administration of psychotropic medication in the past had damaged Respondent's health. Accordingly, that Order should be vacated.

For the reasons hereinafter stated, it is recommended that the District Court conclude that it does have jurisdiction to review the decision of the mental health administrator at this time, and that acting within its appropriate scope of review, the District Court should reverse the decision of the mental health administrator which permitted the forcible administration of psychotropic drugs to this inmate. If warranted medically, his treating psychiatrist on remand may take steps to provide Respondent with psychotropic drugs in compliance with 28 C.F.R. § 549.43.

### FINDINGS OF FACT/REPORT

**I. Respondent Has a "Liberty Interest" and a Due Process Right To Avoid Involuntary Medication By Psychotropic Drugs**

■ The propriety of forcibly medicating federal inmates is governed by the principles set forth in *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), and by regulations adopted by the Bureau of Prisons, 28 C.F.R. §§ 549.40–43. *In Harper,* the Supreme Court concluded that a person had a right to refuse psychotropic drugs based upon the Due Process Clause of the United States Constitution, and that this right was also created by a Washington stat-

ute. *Harper,* 494 U.S. at 221–22, 110 S.Ct. at 1036–37. The Court concluded that the constitutional Due Process right did not extend beyond the rights, or the "liberty interest," created by the Washington statute. *Id.* The *Harper* decision extended the logic of *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), which held that the involuntary transfer of a prisoner to a mental hospital implicates a liberty interest protected by the Constitution's Due Process Clause.

The *Harper* case specifically addressed the substantive findings which must be made, as well as the procedural protections which must be provided to an inmate, before that inmate may be forcibly medicated with psychotropic drugs. "[T]he substantive issue is what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will; the procedural issue is whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." *Harper,* 494 U.S. at 220, 110 S.Ct. at 1035–36.

*Harper* rejected a Due Process challenge to a prison policy codified by Washington statute, which is very similar to the federal regulations under review in this case. The Washington regulations permitted an inmate to be treated with psychotropic drugs against his or her wishes if the inmate was mentally ill and posed a "likelihood of serious harm" to himself, others, or their property. *Harper,* 494 U.S. at 215, 110 S.Ct. at 1033.

The Supreme Court concluded in *Harper* that there was "little doubt as to both the legitimacy and the importance of the governmental interest presented here.... There are few cases in which the State's interest in combating the danger posed by a person to both himself and others is greater than in a prison environment, which, 'by definition,' is made up of persons with 'a demonstrated proclivity for antisocial criminal, and often violent, conduct.'" *Id.* at 225, 110 S.Ct. at 1038 (citations omitted). The Supreme Court found that "[p]rison administrators have not only an interest in ensuring the safety of prison staffs and administrative

cations commonly used in treating mental disorders, but they can have "serious, even fatal, side effects." *Washington v. Harper,* 494 U.S. 210,

229, 110 S.Ct. 1028, 1041, 108 L.Ed.2d 178 (1990).

personnel, but also the duty to take reasonable measures for the prisoners' own safety." *Id.* at 225, 110 S.Ct. at 1039. As the *Harper* Court ruled: "Where an inmate's mental disability is the root cause of the threat he poses to the inmate population, the State's interest in decreasing the danger to others necessarily encompasses an interest in providing him with medical treatment for his illness." *Id.* at 225–26, 110 S.Ct. at 1039.

At the same time, the Court noted that the regulations limited involuntary administration of these drugs to narrow circumstances. "By permitting a psychiatrist to treat an inmate with antipsychotic drugs against his wishes only if he is found to be (1) mentally ill and (2) gravely disabled or dangerous, the Policy creates a justifiable expectation on the part of the inmate that the drugs will not be administered unless those conditions exist." *Id.* at 221, 110 S.Ct. at 1036. It found that the State's policy "is a rational means of furthering the State's legitimate objectives," emphasizing that the policy's "exclusive application is to inmates who are mentally ill and who, as a result of their illness, are gravely disabled or represent a significant danger to themselves or others." *Id.* at 226, 110 S.Ct. at 1039. "[G]iven the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227, 110 S.Ct. at 1039–40.

Authority in this Circuit is consistent with the holding in *Harper. Walton v. Norris,* 59 F.3d 67, 68 (8th Cir.1995); *Cochran v. Dysart,* 965 F.2d 649, 650 (8th Cir.1992); *United States v. Watson,* 893 F.2d 970, 982 (8th Cir.), *vacated in part on reh'g on other grounds by United States v. Holmes,* 900 F.2d 1322 (8th Cir.), *cert. denied, Watson v. United States,* 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990); *accord Coleman v. Wilson,* 912 F.Supp. 1282, 1313 (E.D.Cal. 1995), *appeal dismissed by* 101 F.3d 705 (9th Cir.1996); *Bryant v. Carlson,* 489 F.Supp. 1075, 1087 (M.D.Pa.1979).

## II. The Federal Regulations Governing Forcible Medication Meet the Demands of Due Process.

### A. The Federal Administrative Due Process Scheme

The administrative due process procedures under which it was determined that Respondent should be forcibly medicated are found in 28 C.F.R. § 549.43: "[I]n order to administer treatment or psychotropic medication on an involuntary basis, further administrative due process procedures, as specified in this section must be provided to the inmate." These procedures were adopted by the Bureau of Prisons in 1992 after the *Harper* decision was handed down by the United States Supreme Court. *See* 57 Federal Register 53820 (Nov. 12, 1992). Except in emergency situations, those procedures "must be followed after a person is committed for hospitalization and prior to administering involuntary treatment, including medication." *Id.* This Court examines each of the steps in the administrative process.

 *Initial step.* Before recommending the involuntary administration of psychotropic drugs, the treating psychiatrist must essentially make three determinations, two of which relate to the inmate's dangerousness. First, the treating clinician must find that the drugs are in the inmate's "medical interest." *Harper,* 494 U.S. at 227, 110 S.Ct. at 1039–40. Second, the clinician must find that the inmate "is dangerous to himself or others." *Id.* Finally, the clinician must find that the inmate's treatment with psychotropic drugs is necessary to make the inmate safe to himself or others within the penal institution. *See id.* at 222, 110 S.Ct. at 1036–37.

If the qualified psychiatrist concludes that the inmate "would benefit from such treatment and demonstrates the ability to give informed consent" (28 C.F.R. § 549.41(a)) and if the inmate's informed consent is validly obtained (28 C.F.R. § 549.41(b)), the psychotropic drugs are administered.

*Second step.* When a hospitalized inmate refuses to take prescribed psychotropic medication (or is unable to give informed consent), the inmate must be scheduled for an administrative hearing and may not be medi-

cated prior to the hearing. 28 C.F.R. § 549.43(a). "Staff shall provide 24–hour advance written notice of the date, time, place, and purpose of the hearing, including the reasons for the medication proposal." 28 C.F.R. § 549.43(a)(1). The inmate has the right to appear at the hearing, to present evidence, to have a staff representative, to call witnesses, and to request that witnesses be questioned by the staff representative or by the person conducting the hearing, but no attorney is provided. 28 C.F.R. § 549.43(a)(2). The hearing is conducted by a psychiatrist who is "not currently involved in the diagnosis or treatment of the inmate." 28 C.F.R. § 549.43(a)(3). "The treating/evaluating psychiatrist/clinician must be present at the hearing and must present clinical data and background information relative to the need for medication." 28 C.F.R. § 549.43(a)(4).

In reviewing the treating clinician's recommendation to involuntarily medicate an inmate, the reviewing psychiatrist must determine "whether treatment or psychotropic medication ... is necessary because the inmate is dangerous to self or others, is gravely disabled, or is unable to function in the open population of a mental health referral center or a regular prison." 28 C.F.R. § 549.43(a)(5).[3] The reviewing psychiatrist must prepare a written report of the decision. *Id.* If the reviewing psychiatrist does not find that the inmate is dangerous to self or others within the institution, or does not find that the inmate's treatment with psychotropic drugs is medically appropriate and will treat that danger, the drugs may not be administered.

*Third step.* If the reviewing psychiatrist makes the finding that the drugs should be administered, the inmate may submit an appeal to the institution mental health division administrator within 24 hours of the decision. 28 C.F.R. § 549.43(a)(6). Absent a psychiatric emergency, medication will not be administered before the mental health administrator's decision. 28 C.F.R. § 549.43(a)(7). If

no appeal is filed, "[a] psychiatrist, other than the attending psychiatrist, shall provide follow-up monitoring of the patient's treatment or medication at least once every 30 days after the hearing." 28 C.F.R. § 549.43(a)(8). The follow-up must be documented in the medical record. *Id.*

If the inmate appeals the reviewing psychiatrist's decision, the mental health administrator must review the psychiatrist's decision within 24 hours of the inmate's appeal. The administrator "shall ensure that the inmate received all necessary procedural protections and that the justification for involuntary treatment or medication is appropriate." 28 C.F.R. § 549.43(a)(6). The administrator must find that both the treating clinician and the reviewing psychiatrist have independently reached the conclusions required by *Harper* and the regulations, and that the procedural safeguards were afforded to the patient. If these findings are not or cannot be made, the drugs may not be administered. *Id.* If these findings are made, the psychotropic drugs may be forcibly administered to the inmate.

*Judicial review.* Once the mental health administrator makes his or her decision on the inmate's appeal, no further administrative remedies are available, and the psychotropic drugs may be administered, absent extraordinary judicial relief. Judicial review of the mental health administrator's decision is narrowly constricted, as explained in parts IV and V of this opinion.

## B. Procedural Due Process Issues

When Respondent refused to take the psychotropic drugs, an administrative due process hearing was held at FMC–Rochester on December 6, 1996 under the auspices of 28 C.F.R. § 549.43. Advance written notice of the hearing was given to Respondent on December 4, 1996, and a staff representative was appointed to represent Respondent's interests. Respondent neither appeared at the hearing nor requested that any witnesses

---

**3.** Involuntary medication of an inmate is also permitted under the federal regulations if "psychotropic medication is necessary in order to attempt to make the inmate competent for trial." 28 C.F.R. § 549.43(a)(5). The Court has not considered under what circumstances an inmate may be forcibly medicated under this clause because the Government has not asserted that psychotropic drugs were intended in this instance to make Respondent competent to stand trial.

testify on his behalf, although Susan Bleakley, a registered nurse and Respondent's appointed staff representative, appeared at the hearing. Dr. Steve Altchuler, a psychiatrist from the Mayo Clinic in Rochester, Minnesota, was chosen to conduct the hearing because Respondent was suspicious of medical personnel employed at FMC–Rochester. Respondent was given a copy of Dr. Altchuler's report and advised of his right to appeal, and on December 7, 1996, Respondent filed a timely appeal from Dr. Altchuler's report with FMC–Rochester's mental health administrator, Dr. Ruth E. Westrick. Dr. Westrick denied Respondent's appeal on December 10, 1996.

■ The federal regulations at issue here provide the same procedural protections to inmates that were provided by the Washington prison policy considered and upheld in *Harper*. *See Harper*, 494 U.S. at 216, 110 S.Ct. at 1033–34, 28 C.F.R. § 549.43(a). The procedures prescribed by the federal regulations conform with the requirements of the Due Process Clause.

In *Harper*, the Supreme Court specifically ruled that the decision about whether to forcibly medicate a prisoner may be made by medical professionals, rather than in a judicial setting. *See Harper*, 494 U.S. at 231, 110 S.Ct. at 1042 ("[W]e conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge."); *id.* at 233, 110 S.Ct. at 1042–43 ("The risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals. A State may conclude with good reason that a judicial hearing will not be as effective, as continuous, or as probing as administrative review using medical decisionmakers. We hold that due process requires no more."); *accord Bailey v. Gardebring*, 940 F.2d 1150, 1154 n. 4 (8th Cir. 1991), *cert. denied*, 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992).

■ Respondent's argument that his constitutional rights were violated because his court-appointed attorney was not contacted prior to the administrative due process hearing is also without merit. The Supreme Court in *Harper* specifically held that a lawyer need not be made available to an inmate in connection with an administrative due process hearing. *Harper*, 494 U.S. at 236, 110 S.Ct. at 1044–1045. The provision of an independent lay advisor who understands the psychiatric issues involved is sufficient protection under *Harper*. *Id.* In this case, Respondent was provided with a qualified staff representative, a trained nurse, to represent his interests. His procedural constitutional rights were not violated.

## C. Substantive Due Process Issues

■ The federal regulations on their face permit involuntary administration of psychotropic medication "because the inmate is dangerous to self or others, is gravely disabled, or is unable to function in the open population of a mental health referral center or a regular prison." 28 C.F.R. § 549.43(a)(5). The Washington statute defined "gravely disabled" primarily in terms of safety concerns.[4] In the federal regulations, the term "gravely disabled" is not defined, and no guidance as to what that term means was published in the Federal Register when those regulations were first promulgated. *See* 57 Federal Register 53820 (Nov. 12, 1992). The disjunctive "or" language in 28 C.F.R. § 549.43(a)(5) would permit a finding of "gravely disabled," in and of itself, to be enough to warrant the involuntary medication of a federal prisoner.

In Part I of this opinion the Court concluded that, under *Harper*, an inmate cannot be forcibly medicated unless it has been determined that this is necessary to protect the inmate or other persons at the institution from bodily harm. If the "gravely disabled" language in the federal regulations were not read to require a showing of dangerousness

4. The Washington statute defined "gravely disabled" as "a condition in which a person, as a result of a mental disorder: (a) [i]s in danger of serious physical harm resulting from a failure to provide for his essential human needs of health or safety, or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety." *Harper*, 494 U.S. at 215 n. 3, 110 S.Ct. at 1033 n. 3.

within the institution, the regulation would be unconstitutional under the Due Process Clause. *Cf. Washington v. Silber*, 805 F.Supp. 379, 384 n. 6 (W.D.Va.1992), *aff'd* 1993 WL 188309 (4th Cir. June 2, 1993) (unpublished op.).

The first sentence of 28 C.F.R. § 549.43 makes it clear that the regulations are intended to meet the standards of *Harper* and other federal court decisions [5] The next sentences distinguish between the judicial procedures which allow a person to be committed, and the non-judicial procedures to be followed in order to administer psychotropic medication on an involuntary basis, once dangerousness in the prison setting is shown.

Thus, implicit in the "gravely disabled" language of 28 C.F.R. § 549.43(a)(5) must be the requirement that a reviewing psychiatrist find that an inmate is dangerous to self or others within the penal institution before concluding that the inmate may be involuntarily medicated. This is consistent with the opinion of the court in *Cochran v. Dysart*, 965 F.2d 649, 650–51 (8th Cir.1992). In *Cochran*, the psychiatrist's report noted that the inmate was "gravely disabled" and was "mentally ill and dangerous and medication is necessary to treat the mental illness causing dangerousness." *Id.* at 650. However, there was no record evidence to support the finding of dangerousness. *Id.* at 650–61. The Court of Appeals remanded the case for the district court to verify that the inmate's forced medication was necessary for safety concerns within the institution. Judge Loken dissented, but only because he concluded that on the facts presented, there was no doubt that the inmate was "dangerous to others in the prison environment without such medication." *Id.* at 651.

A finding that psychotropic drugs are necessary to alleviate the inmate's dangerousness within the penal institution is a prerequisite because it is only the government's interest in making the penal institution and the inmate safe that permits the forcible administration of psychotropic drugs in the first place. *Harper*, 494 U.S. at 236, 110

S.Ct. at 1044–45 (the Washington prison policy was "an accommodation between an inmate's liberty interest in avoiding the forced administration of antipsychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others").

The court held in *United States v. Watson*, 893 F.2d 970, 982 (8th Cir.1990), that prison inmates are protected "from the forced administration of psychotropic drugs except when prison officials, in the exercise of their professional judgment, believe that such medication is required to control the prisoner in the general prison population" and that "due process requires that a qualified professional determine that the forcible administration of medication is, in his or her opinion, necessary to assure everyone's safety." *Id.* at 980. It held that "psychotropic drugs may be constitutionally administered to a mentally ill federal prisoner whenever, in the exercise of professional judgment, such an action is deemed necessary to remove that prisoner from seclusion and to prevent the prisoner from endangering himself or others." *Id.*

█ This Court concludes that the federal regulations, as construed in this opinion, comply with the requirements of the Due Process Clause of the United States Constitution. *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841, 106 S.Ct. 3245, 3251–52, 92 L.Ed.2d 675 (1986) (citations omitted) ("[f]ederal statutes are to be so construed as to avoid serious doubt of their constitutionality"); *United States v. Garfinkel*, 29 F.3d 451, 455 (8th Cir.1994) (same); *Chu Drua Cha v. Noot*, 696 F.2d 594, 596, 607 (8th Cir.1982) (regulations should be interpreted to avoid a constitutional question).

### III. Is Forcible Medication Permissible In This Case?

█ The federal regulations as construed are valid, both procedurally and as a matter of substance. This Court recommends that

---

**5.** "Title 18 U.S.C. 4241–4247 and federal court decisions require that certain procedures be followed prior to the involuntary administration of psychiatric treatment and medication to persons in the custody of the Attorney General." 28 C.F.R. § 549.43.

the District Court reverse the mental health administrator's decision which permits involuntary medication of the inmate in this case. Where a mental health administrator has approved the involuntary administration of psychotropic medication to an inmate, judicial review of the mental health administrator's decision is available, to determine whether the inmate can sustain his burden of establishing that the Government has failed to comply with the applicable regulations. Since the inmate has sustained that burden in this case, the decision of the mental health administrator should be reversed.

### A. Mental Health Administrator

■ Ultimately, it is the decision of the mental health administrator which serves to authorize the forcible administration of psychotropic medication, and it is that decision which the Court must review. While that administrator, Dr. Ruth E. Westrick, appropriately concluded that the procedural due process requirements were satisfied, the record does not reflect that she satisfied herself that the treating psychiatrist and the reviewing psychiatrist had each independently concluded that the inmate was dangerous to self or others, and the inmate's treatment with psychotropic drugs was required.

Dr. Westrick did not testify at the March 4, 1997 hearing. However, Dr. Donna Sigurdson, a staff psychiatrist at FMC–Rochester, testified as follows:

Q. Now, Dr. Westrick was reviewing the due process hearing to see whether due process requirements of the Bureau of Prisons regulations were complied with, correct?

A. Yes.

Q. And she was not reviewing for medical necessity, was she?

A. No.

Q. Or for appropriateness of the medication?

A. No.

Q. Or for grave disability?

A. No.

Q. Or for mental illness?

A. No.

*See* Evidentiary Hearing Transcript, pp. 142–43. This evidence is somewhat ambiguous, since it is not required that the mental health administrator must herself make findings concerning the inmate's dangerousness, or appropriateness of medication, but only that she must review the record and conclude that these decisions have been made with proper justification by the appropriate persons in an appropriate procedural manner. *See* 28 C.F.R. § 549.43(a)(6) ("The administrator shall ensure that the inmate received all necessary procedural protections and that the justification for involuntary treatment or medication is appropriate."). There is no record basis upon which the Court could conclude that Dr. Westrick made the required findings.

■ The decision of the mental health administrator should not be reversed merely because the form of her findings may be insufficient. If a review of the evidence at the earlier levels shows that the decision was supported as required, the fact that it was not so certified by the mental health administrator in her decision on appeal should not require reversal. This Court therefore examines the record at the first two levels. It is not to be expected that a "record" will be kept at any level in these proceedings in the same form that it might be kept in a formal judicial proceeding, so the Court is not restricted to a review of transcripts or formal exhibits.

### B. Treating Psychiatrist—Step One

■ The Court cannot find substantiation of the reasons why Respondent's treatment team recommended that Respondent be forcibly medicated, and as to what reasons were offered at the administrative due process hearing to support that recommendation. *See* Evidentiary Hearing Transcript, pp. 79–80, 91–92, 120–22. Dr. Altchuler's report indicates that Respondent was given over 24–hours notice of the hearing. However, a copy of the written notice that Respondent received was not offered into evidence at the hearing on March 4, 1997. Consequently, it is impossible to determine the reasons for the medication proposal.

At the administrative due process hearing itself, Dr. Altchuler heard testimony from Respondent's treating psychiatrist and psychologist, as required by 28 C.F.R. § 549.43(a)(4), *id.* at 117; Gov't Ex. 3, but Dr. Altchuler's report does not reveal the reasons offered by Respondent's treating clinicians for wanting to forcibly medicate him, and the Court was not presented with his notes or other records of the reasons.

Dr. Sigurdson, a member of Respondent's latest risk assessment panel, was not part of Respondent's treatment team, and did not testify at the administrative due process hearing. *Id.* at 68, 88–89. At the evidentiary hearing on March 4, 1997, she noted that in late 1996 Respondent had gotten three incident reports and that he had become "more agitated." *Id.* at 107. These incident reports were for unauthorized or inappropriate use of the mail, refusing an order, and assault. *Id.* at 108–09. The assault involved an incident in the TV room in which Respondent hit an inmate with a mop. *Id.* at 128. While this incident might allow a reviewing psychiatrist to conclude that Respondent is dangerous within FMC–Rochester, Dr. Altchuler neither made that finding nor found that the use of psychotropic drugs is necessary to render Respondent safe within the institution.

Based on the records provided at the hearing on March 4, 1997, this Court is unable to determine whether the mental health administrator found that the Government complied with the regulatory provision that requires the "treating/evaluating psychiatrist/clinician [to] present clinical data and background information relative to the need for medication" at the hearing (28 C.F.R. 549.43(a)(4)).

### C. Reviewing Psychiatrist—Step Two

■ A copy of reviewing psychiatrist Dr. Altchuler's "Involuntary Medication Report" of December 6, 1996 is attached as an Appendix to this Report and Recommendation. Dr. Altchuler concluded that Respondent is "gravely disabled" in the "Findings" section of his report. But before answering "yes" to the question "Is mentally ill and dangerous and is necessary to treat the mental illness?,"

Dr. Altchuler crossed out the words "and dangerous" in that sentence. *See* Gov't Ex. 2, p. 3. Dr. Altchuler checked a line labeled "UNKNOWN" beneath the question, "Is dangerous to self or others?," and checked a line labeled "no" beneath the question, "Is unable to function in the open population?" *Id.* The section of the report labeled "Justification for medication" merely reads: "His dysfuncion [sic] from a delusional disorde [sic] for which the primary effective treatment is neuroleptic medication. Less intensive treatments have been tried and failed." *Id.*

Dr. Altchuler's narrative report, which accompanied his "Involuntary Medication Report," does state: "There have been a few incidents recently involving aggressive behavior and striking other inmates that have required Mr. McAllister to be placed in the Special Housing Unit." *See* Gov't Ex. 3, p. 2. However, Dr. Altchuler specifically stated in the "Involuntary Medication Report" that he did not know whether Respondent posed a danger to self or others.

It is plain that Dr. Altchuler did not make the finding that Respondent is dangerous to self or others, nor that administration of psychotropic drugs would treat that condition, as required by 28 C.F.R. § 549.43(a)(5). Therefore, involuntary administration of psychotropic drugs is not permitted under the regulations.

### D. The Appropriate Form of Judicial Relief

A finding has already been made that Respondent would be a danger to society if released from prison by virtue of the commitment proceeding conducted pursuant to 18 U.S.C. § 4246(d). In this case, the inmate has sustained his burden of showing that no findings have been made by the medical professionals that he is dangerous to himself or others *in a prison setting* or that administering psychotropic medication will treat that danger. Accordingly, the District Court should reverse the decision of the mental health administrator authorizing the forcible medication of the inmate.

Respondent has requested injunctive relief to prohibit FMC–Rochester staff from involuntarily medicating him. However, FMC–Rochester personnel are no longer forcibly medicating Respondent. He has not established imminent risk of harm necessary for injunctive relief. There is no reason to believe that FMC–Rochester staff will intentionally violate an order of this Court or their own regulations. An order merely requiring the staff of the Bureau of Prisons to comply with regulations is not appropriate. *Daniels v. Woodbury County, Iowa*, 742 F.2d 1128, 1134 (8th Cir.1984) ("[A]n injunction which does little or nothing more than order the defendants to obey the law is not specific enough.") (citing *Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir.1981) ("A general injunction which in essence orders a defendant to obey the law is not permitted.")).

Rule 65(d) of the Federal Rules of Civil Procedure "is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, to avoid the possible founding of contempt citations on an order that is too vague to be understood, and to ascertain that the appellate court knows precisely what it is reviewing." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir.1987). Respondent's request for injunctive relief should be denied. *Rhone–Poulenc Rorer Pharmaceuticals, Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 517 (8th Cir.1996) (injunctive relief requiring competitor to disclose "food effect" of its product was not sufficiently specific or described in sufficient detail).

## IV. Jurisdiction

The administrative due process procedures set forth at 28 C.F.R. § 549.43 do not expressly provide for any form of judicial review of the mental health administrator's final decision. However, in the appropriate procedural context, prisoners can judicially challenge decisions that they be medicated against their wishes. *See Harper*, 494 U.S. at 235, 110 S.Ct. at 1043–44 (stating that "under state law an inmate may obtain judicial review of the hearing committee's decision by way of a personal restraint petition

or petition for an extraordinary writ"); *Cochran*, 965 F.2d at 650–51 (allowing judicial review of a psychiatrist's decision to involuntarily medicate a person in the custody of the Attorney General pursuant to 18 U.S.C. § 4246).

Respondent has not articulated the jurisdictional basis upon which the Court would act, so we address that separate issue *sua sponte*, although the Government has not challenged the Court's jurisdiction.

In *Buckley v. Iowa State Penitentiary*, 1993 WL 105940 (8th Cir.1993) (unpublished op.), the United States Court of Appeals for the Eighth Circuit determined that the present legal claims cannot be asserted in a habeas corpus proceeding, but that they could be considered "in an appropriate proceeding." However, the *Buckley* decision does not delineate in what particular context a Court may consider a claim that prison officials are forcibly medicating an inmate in violation of the Constitution.

One unpublished decision from the United States Court of Appeals for the Fourth Circuit rejected a federal prisoner's contention that a writ of mandamus should issue because he was being forcibly medicated, finding that mandamus relief is only available when there are no other means by which the relief sought could be granted. *In re English*, 1990 WL 174661 at *1 (4th Cir.1990) (unpublished op.); *see also* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). The Fourth Circuit ruled in *English* that the prisoner's claims "regarding involuntary medication ... may be addressed in a *Bivens* action." *In re English*, 1990 WL 174661 at *1. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a damages remedy is available to persons whose constitutional rights are violated by federal officials. *Krueger v. Lyng*, 927 F.2d 1050, 1053 (8th Cir.1991).

Under 28 U.S.C. § 1361, a writ of mandamus may issue against an officer of the United States only when the plaintiff has a clear right to relief, the defendant has a clear duty to perform the act in question, and the plaintiff has no adequate alternative remedy. *Borntrager v. Stevas,* 772 F.2d 419, 420 (8th Cir.), *cert. denied,* 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985); *Falcon v. United States Bureau of Prisons,* 852 F.Supp. 1413 (S.D.Ill.1994), *aff'd,* 52 F.3d 137 (7th Cir.1995). Furthermore, mandamus relief is available only where the action which the officer, employee or agency refuses to perform is ministerial in nature. *Columbia Transit Corp. v. Jones,* 572 F.2d 168 (8th Cir.1978).

The involuntary administration of psychotropic drugs is more than ministerial in nature, so issuance of a writ of mandamus would be inappropriate. *Id.* Respondent has not initiated a *Bivens* action or a lawsuit under 42 U.S.C. § 1983, so the Court also need not address whether either of those types of actions would provide an alternative form of relief to Respondent. *See Krueger v. Lyng,* 927 F.2d 1050, 1057 (8th Cir.1991) (declining to reach the issue of whether injunctive relief is available in a *Bivens* action); *Walton v. Norris,* 59 F.3d 67 (8th Cir.1995) (prisoner's section 1983 action asserting that forced psychotropic medication violated Due Process dismissed because evidence was sufficient to justify the involuntary medication of prisoner).

This Court finds that it has jurisdiction over this matter by virtue of the Administrative Procedure Act ("APA"). *See* 5 U.S.C. §§ 701–706. Except as otherwise provided by law, the APA judicial review provisions apply to all federal agency actions unless a statute precludes judicial review or agency action is committed by law to agency discretion. 5 U.S.C. § 701(a). Because no statute precludes judicial review and Congress has not delegated to the Bureau of Prisons the discretionary authority to make the decisions to forcibly medicate federal prisoners, the provisions of the APA would appear to be applicable. *See Farmer v. Hawk,* 1996 WL 525321 *4 (D.D.C. Sept.5, 1996) (unpublished op.) (where plaintiff chal-

lenged the constitutionality of Bureau of Prisons regulations regarding the handling of HIV-positive inmates, the court ruled that plaintiff "is entitled to injunctive and declaratory relief against any federal agency officials when their actions violate the United States Constitution"). The APA explicitly provides that an "action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer." 5 U.S.C. § 703. Here, Respondent's pleadings list the "United States of America" as the opposing party, so Respondent has properly initiated his request for judicial review with this Court pursuant to the APA.

To obtain relief under the APA, an inmate must demonstrate that he has suffered a "legal wrong because of agency action." *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action ... is entitled to judicial review thereof."). A legal wrong is defined as "the invasion of a legally protected right." *Pennsylvania R. Co. v. Dillion,* 335 F.2d 292, 294 (D.C.Cir.), *cert. denied,* 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964). Because Respondent is alleging that his Due Process rights were violated, Respondent has adequately stated a claim upon which relief can be granted under the APA. *Farmer,* 1996 WL 525321 at *4.

## V. Scope of Review

In light of this Court's previous findings, the Court recommends that the mental health administrator's decision be reversed. 5 U.S.C. § 706(2) (a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right," or "without observance of procedure required by law"). The Court is not persuaded that the scope of review of the decision of the mental health administrator is as broad as may be applicable in other circumstances. *See Mayo v. Schiltgen,* 921 F.2d 177, 179 (8th Cir.1990) ("A court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider

whether to pursue a new rationale for its decision or perhaps to change its decision."); *Hinsdale Hospital Corp. v. Shalala,* 857 F.Supp. 621, 624 (N.D.Ill.1994) ("Under the APA, a reviewing court should reverse an agency's decision only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or if the decision is unsupported by substantial evidence in the administrative record."), *aff'd,* 50 F.3d 1395 (7th Cir.1995).

Even though judicial review of the administrator's final decision is available, courts should grant considerable deference to the expertise of medical professionals in these matters. The Supreme Court made it clear in *Harper* that a non-judicial decision is not only permissible, it may be preferable. "Notwithstanding the risks that are involved, we conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Harper,* 494 U.S. at 231, 110 S.Ct. at 1042. The Supreme Court went on to explain that this serves not only the inmate but the institution. "Nor can we ignore the fact that requiring judicial hearings will divert scarce prison resources, both money and the staff's time, from the care and treatment of mentally ill inmates." *Id.* at 232, 110 S.Ct. at 1042. "A State may conclude with good reason that a judicial hearing will not be as effective, as continuous, or as probing as administrative review using medical decision makers. We hold that due process requires no more." *Id.* at 233, 110 S.Ct. at 1043.

The principles enunciated in *Harper* are found in many other authorities. *E.g. United States v. Bryant,* 670 F.Supp. 840, 845 (D.Minn.1987) ("courts should defer to the expertise of prison administrators and mental health professionals" in reviewing whether an inmate may be forcibly medicated); *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with other aspects of health care, this remains a question of sound professional judgment."); *Silber,* 805 F.Supp. at 385 ("It is neither possible nor helpful to judicially micro-manage an inmate's psychiatric treatment. Psychiatrists must be free to respond to fluctuations or variations in a patient's condition.").

The U.S. Supreme Court stated in *Youngberg v. Romeo,* 457 U.S. 307, 323–324, 102 S.Ct. 2452, 2462–63, 73 L.Ed.2d 28 (1982):

"[C]ourts must show deference to the judgment exercised by a qualified professional. By so limiting judicial review of challenges to conditions in state institutions, interference by the federal judiciary with the internal operations of these institutions should be minimized. Moreover, there certainly is no reason to think judges or juries are better qualified than appropriate professionals in making such decisions. For these reasons, the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that *the person responsible actually did not base the decision on such a judgment."*

*Id.* at 323–24, 102 S.Ct. at 2462–63 (emphasis supplied) (citations omitted).

This Court does not need to reach the question of the scope of review of decisions in another context, but the Court suspects that if any reliable evidence exists to support the administrator's determination, the Court has no role to play in deciding whether the mental health administrator's determination was correct, as long as it was made in accordance with the regulations.

In this case, the inmate has satisfied his burden of demonstrating that the medical health professionals did not in fact base their decision to administer drugs on the judgments they are required to make under the federal regulations. *Cf. Washington v. Silber,* 1993 WL 188309 *3 (4th Cir. June 2, 1993) (unpublished op.) ("Procedural due process is satisfied if this decision [to involuntarily medicate] is made by medical professionals; no judicial preclearance in [sic] required. Nonetheless, the substantive findings—dangerousness and the prisoner's medical interest—must be made.").

## VI. The Exhaustion of Remedies Issue

 Although the record does not show it, both parties agree that Respondent filed an administrative appeal from Dr. Westrick's final decision within the Bureau of Prisons appeal process set forth at 28 C.F.R. §§ 542.10, et seq. The Government argues that this Court should decline to review the administrator's decision until those administrative processes are exhausted. This Court concludes that the available administrative remedies were exhausted after the mental health administrator ruled upon the appeal of the inmate on December 10, 1996, and that appeals under 28 C.F.R. §§ 542.10, et seq., are not available in these matters.

The regular Bureau of Prisons appeal procedures for appealing an "issue which relates to any aspect of their confinement" are found at 28 C.F.R. §§ 542.10, et seq. But those procedures are available only "except as excluded in" 28 C.F.R. § 542.12. "Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established...." 28 C.F.R. § 542.12(b). Here, an alternate administrative appeal procedure specifically allows a federal prisoner to appeal the reviewing psychiatrist's decision to the institution mental health division administrator. 28 C.F.R. § 549.43(a)(6). Because section 549.43(a)(6) establishes another administrative procedure by which a federal prisoner can obtain relief from an issue which affects his or her confinement, the administrative appeal procedures set forth at 28 C.F.R. §§ 542.10, et seq., are unavailable. As a result, the administrative appeal that Respondent filed from Dr. Westrick's final decision was a nullity, and must be disregarded.

In addition to the plain language of the regulations themselves, sound policy concerns dictate that the decisions of the mental health administrator be immediately subject to limited judicial review without further administrative appeal. The administrative scheme set forth at 28 C.F.R. § 549.43 is intended to allow medical professionals promptly to determine whether psychotropic drugs should be administered involuntarily. After all, the concern is that without the medication, the inmate will be dangerous to himself or others. It is for that reason that inmates need only be given 24–hours notice of the administrative hearing, that the reviewing psychiatrist's decision can only be appealed from within 24 hours of its issuance, and that the administrator must review the inmate's appeal from the reviewing psychiatrist's decision within 24 hours. The regulations allow an inmate to be forcibly medicated after the mental health administrator makes his or her final decision. Further review by non-medical personnel within the Bureau of Prisons is not contemplated. If an inmate were required to exhaust the administrative appeal procedures set forth at 28 C.F.R. §§ 542.10, et seq., before seeking judicial review, an inmate could be subjected to involuntary medication for months before judicial review could even be sought.

## VII. Respondent Is Not Entitled to the Appointment of a Health Care Guardian

 This Court also has before it Respondent's *pro se* letter-motion of February 21, 1997, requesting the appointment of a "health care guardian." [Docket Nos. 19 & 20]. After reviewing Respondent's letter-motion, the Court is not persuaded that Respondent is entitled to the appointment of a health care guardian. Prior to his commitment pursuant to 18 U.S.C. § 4246, Respondent appointed his sister, Peggy McAllister, Esq., as his legal guardian. If the Government convenes another administrative due process hearing (which it may do so long as the procedures set forth in 28 C.F.R. § 549.43, as construed herein, are complied with), his designated legal guardian may take steps to protect Respondent's interests in that proceeding. Moreover, Respondent has cited no provision of federal law specifically authorizing the appointment of a health care guardian or holding that he has a constitutional right to the appointment of one. Accordingly, Respondent's Motion for the Appointment of a Health Care Guardian should be denied.

### RECOMMENDATION

For the foregoing reasons,

IT IS HEREBY RECOMMENDED THAT:

1. The determination of the mental health administrator at FMC–Rochester, authorizing the forcible medication of Respondent, be reversed and remanded for further proceedings, if warranted, consistent with this opinion.

2. Respondent's Motions for a Temporary Stay of Involuntary Medication [Docket Nos. 13 & 14] be denied.

3. The Order of January 29, 1997, granting Respondent's Motion for a Temporary Stay of Involuntary Medication [Docket No. 15], be vacated.

4. Respondent's Motion for Appointment of a Health Care Guardian [Docket No. 19] be denied.

## APPENDIX

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

P.S. 6000.03 CN–15
November 10, 1992
Attachment 6600–X–1

INVOLUNTARY MEDICATION REPORT

Federal Medical Center–Rochester, MN.
Institution

High/In
Institution Security Level

Howard McAllister
Name of Inmate

16446–016
Register Number

March 8, 1994
Date of Mental Health Commitment

Delusional Disorder
Diagnosis

I. Notice of Hearing

 A. Advance written notice of the hearing was given to the inmate on _____12/14/96_____ at _____1430_____ by _____J. Beighley_____ .
 (date) (time) (staff member)

 B. The hearing was convened on _____12/6/96_____ at _____1330_____ .

 C. The inmate was advised of his or her rights at the hearing by _____ on _____ and a copy of the notice and
 (staff member) (date)
 advisement form is attached.

II. Staff Representative

 A. Inmate requested staff representative _____
 (Name)
 who appeared.

 Yes ____ No ____

 B. Staff representative _____S. Bleakley, RN_____ was appointed and appeared.

 Yes __XX__ No ____

III. Presentation of Evidence

 A. Inmate (admits) (denies) that psychotropic medication is required.

 B. Summary of inmate statement:
Mr. McAllister respectfully declined. Attached is submitted paper work. He (Mr. McAllister) didn't give him (Dr. Altchuler) rights to look into his files. Mr. McAllister won't speak to him unless we show him a court order telling him he has the rights to look into his file.

(LOCAL REPRODUCTION AUTHORIZED)

 C. Witnesses
 1. Inmate requested witnesses.
 Yes \_\_\_\_ No <u>XX</u>

 2. The following persons were called and appeared.

 _____ _____

 _____ _____

 3. A summary of the testimony of each witness is attached.

 4. The following persons requested were not called for the following reason(s).

 5. Unavailable witnesses were requested to submit statements and those statements were considered.

 Yes \_\_\_\_ No \_\_\_\_

 D. Documentary Evidence

 In addition to the notice and advisement form, the following information was considered:

 1. Court order committing the inmate for mental health care and treatment.

 Yes <u>XX</u> No \_\_\_\_

 2. Psychiatric/psychological reports submitted at the commitment hearing.

 Yes <u>XX</u> No \_\_\_\_

 3. Treatment proposal and justification.

 Yes <u>XX</u> No \_\_\_\_

 4. Alternative to medication.

 Yes <u>XX</u> No \_\_\_\_

IV. Findings

 A. The inmate suffers from a mental disorder.

 Yes <u>XX</u> No \_\_\_\_

B. The hearing psychiatrist believes that the inmate does __XX__ does not _____ require psychotropic medication. Medication is required because the inmate:

1. Is dangerous to self or others

 Yes _____ No _____ UNKNOWN __XX__

2. Is gravely disabled.

 Yes __XX__ No _____

3. Is unable to function in open population.

 Yes _____ No __XX__

4. In order to become competent for trial.

 Yes _____ No __XX__

5. Is mentally ill ~~and dangerous,~~ and medication is necessary to treat the mental illness.

 Yes __XX__ No _____

V. Specific information relied upon to support findings:
Central file, Medical file, Testimony by treating Psychiatrist and Psychologist. Commitment order. Psychology and Psychiatry reports. Laboratory reports. Material submitted from patient.

IV. Medication Approved.

 Yes __XX__ No _____

VII. Justification for medication:
His dysfuncion results from a delusional disorde for which the primary effective treatment is neuroleptic medication. Less intensive treatments have been tried and failed.

VIII. Appeal Rights
The inmate has been advised of the findings, specific evidence relied upon, medication approval and justification. The inmate has also been advised that he/she may appeal the medication decision within 24 hours to the Administrator of the Mental Health Division and that the administrator has 24 hours after receipt of the appeal to render a decision. No medication will be given until the appeal is completed. A copy of this report has been given to the inmate.

 Yes __XX__ No _____

IX. __/s/ SJ Altchuler MD_____
 Reviewing Psychiatrist

Delivered to inmate on _____12/6/96_____ at _____15:15_____
 (date) (time)

by __/s/J. Beighley_____ J. Beighley_____
 Staff Member Signature Printed Name